J-A01021-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M. ESTELLE THOMAS TRUST | : | IN THE SUPERIOR COURT OF |
| APPEAL OF NORMA T. RUCKNO | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1705 EDA 2019 |

Appeal from the Decree Entered May 3, 2019
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2015-E0294

BEFORE:   NICHOLS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED MARCH 03, 2020**

Norma T. Ruckno (Appellant) appeals from the Decision and Decree issued by the Orphans' Court in this litigation concerning a family trust. After careful review, we affirm.

As the Orphans' Court and the parties are familiar with the extensive underlying facts and evidence presented, we adopt the detailed recitation of facts from the Orphans' Court opinion. **See** Orphans' Court Opinion, 8/7/19, at 2-10. In short, Appellant and Spring Jarret (Sister) are sisters, and their mother was M. Estelle Thomas (Decedent). Appellant is married to Charles Ruckno (Charlie), and Sister is married to Thomas L. Jarret (Tom).

Following a family dispute, Decedent established, on April 20, 1994, the

_____

[*] Retired Senior Judge assigned to the Superior Court.

Thomas Revocable Living Trust (Trust), as well as a power of attorney (1994 POA) and a will. The Trust gave Sister a greater share of Decedent's property, and Appellant a lesser share. Decedent was both the Settlor and the "Initial Trustee." Section 3.02 of the Trust provided that when Decedent no longer served as Trustee, the following individuals, in this order, would serve as "Successor Trustee": Sister; Appellant; Tom; and Charlie. Trust, 4/20/94, at 4-5. Each "Successor Trustee" . . . "shall serve singly and successively, and not jointly." *Id.* at 5. With respect to amending the Trust, Section 9.03 stated: "This Agreement may not be amended, revoked, or otherwise modified except by a written document executed by the Settlor." *Id.* at 30. However, Section 4.01(b) additionally provided: "During the incapacity of the Settlor, no person other than the Settlor's duly appointed attorney-in-fact pursuant to a written, valid, durable power of attorney **granting the requisite powers** shall be entitled to amend . . . this Agreement[.]" *Id.* at 8 (emphasis added).

The 1994 POA named Sister as Decedent's attorney-in-fact, and specifically granted Sister the attorney-in-fact authority to amend any revocable trust that Decedent could amend. 1994 POA, 4/20/94, at 4. In addition, Decedent's will bequeathed "all personal property not held in trust . . . to [Sister] and any remaining property [to] the Trust." Orphans' Court Opinion, 8/7/19, at 2.

Sister "suffered from severe alcoholism which surfaced around 1989,"

and she was diagnosed with throat cancer in 2008. Orphans' Court Opinion, 8/7/19, at 4-5. Nevertheless, in 2009, when Decedent's health began to deteriorate, Decedent executed another power of attorney (2009 POA), again naming Sister as attorney-in-fact.

In the summer of 2014, Sister lived with Appellant and Charlie and "continued to drink excessively." Orphans' Court Opinion, 8/7/19, at 5. That September, Sister experienced hallucinations and was hospitalized. On September 30, 2014, Sister executed two instruments: one appointing Appellant as her co-attorney-in-fact under Decedent's 2009 POA, and the other appointing Appellant as her co-trustee of the Trust.

On January 19, 2015, Appellant and Sister executed a document (First Amendment) purporting to amend the Trust. This "amendment," which had words crossed-out, provided that "[a]ll personal and business property [was] to be divided equally between" Appellant and Sister.[1] Amendment to Trust, 1/19/15, Trial Exhibit P-15. Further, where the Trust gave Decedent's residential real estate and the family business real estate to Sister without any restrictions, the First Amendment prohibited the sale of the real estate. *See* Amendment to Trust, 1/20/15, Trial Exhibit P-16.

---

[1] "Decedent had inherited the family business, Silver King Manufacturing, from her father." Orphans' Court Opinion, 8/7/19, at 3. When Decedent died, she owned more than 70% of the stock in the business; these shares were held in the Trust. Orphans' Court Decision & Decree, 5/3/19, at 4. The balance of the shares was owned equally by Appellant and Sister. *Id.*

The next day, January 20, 2015, Appellant and Sister executed a second document (Second Amendment), which, according to Appellant, was executed to "clean up the First Amendment's handwritten language." Orphans' Court Opinion, 8/7/19, at 7. This document provided that all property was to be divided equally between Appellant and Sister.

On February 2, 2015, Appellant and Sister executed a third amendment (Third Amendment) to the Trust. The signature lines on the first two amendments identified them each as "Trustee"; however, the signature lines of the Third Amendment indicated that Appellant and Sister were signing pursuant to both their powers of attorney and their capacities as co-trustees.[2] *See* Amendment to Trust, 2/2/15, Trial Exhibit P-17.

Two days after the execution of the Third Amendment, on February 4, 2015, Decedent died. On March 11, 2015, Sister underwent an extensive neuropsychological evaluation by Kathy Lawler, D. Phil. Dr. Lawler opined that Sister "demonstrated severely impaired learning and memory abilities," was "not competent to make medical and financial decisions," and "require[d] close supervision 24 hours per day." Orphans' Court Opinion, 8/7/19, at 8. Dr. Lawler further opined that Sister's impairments "manifested over time," and not suddenly, as in the case of stroke or brain injury. *Id.*

On May 14, 2015, Sister's husband, Tom, acting under a power of

---

[2] The three Trust amendments were drafted by Appellant's son, Mark Ruckno. Orphans' Court Opinion, 8/7/19, at 6, 8.

attorney for Sister, commenced this action by filing an "Emergency Petition for Appointment of Trustee *Pro Tem*" and a petition for citation to show cause. The petitions sought declarations invalidating the following: the appointment of Appellant as co-trustee of the Trust; any actions taken by Appellant as a purported co-trustee; and the three Trust Amendments.

The Orphans' Court conducted evidentiary hearings on September 25 - 26, 2018. Tom testified, and presented the testimony of Appellant, Charlie (Appellant's husband), and Mark (Appellant's son). Tom also presented the deposition testimony of Dr. Lawler. Appellant introduced documents but did not call witnesses.

On May 3, 2019, the Orphans' Court issued a 38-page Decision and Decree, setting forth extensive findings of fact and conclusions of law. The Court found that Sister's purported appointment of Appellant as co-trustee, as well as the three Trust Amendments, were invalid. The Court also found that Sister no longer had the capacity to serve as trustee of the Trust, but Appellant, the next designated "Successor Trustee" according to Section 3.02 of the Trust, could not serve due to her "abuse of the circumstances surrounding [S]ister's mental incapacities and her unclean hands in attempting to amend the Trust for her benefit." ***See*** Orphans' Court Opinion, 8/7/19, at 10. The Court thus appointed the next designated "Successor Trustee," Tom, as trustee.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P.

1925(b) statement.[3] The Orphans' Court issued a detailed and comprehensive Pa.R.A.P. 1925(a) opinion on August 7, 2019.

Appellant presents five issues for our review:

I. Was the Court's Decision that the September 30, 2014, Amendment to Trust appointing [Appellant] as Co-trustee of the [Trust] invalid, a reversible error of law and an abuse of discretion?

II. Did the Court commit a reversible error of law and abuse its discretion in determining that the Trust Amendments dated January 19, 2015, January 20, 2015 and February 2, 2015, are invalid?

III. Was it a reversible error of law and abuse of discretion for the Court to determine that [Sister] lacked the necessary capacity to execute the Amendments to Trust dated September 30, 2014, January 19, 2015, January 20, 2015, and February 2, 2015?

IV. Did the Court below commit an error of law and abuse its discretion by determining that [Appellant] and [Sister] were in a confidential relationship which was abused by [Appellant]?

V. Did the Court abuse its discretion and commit an error of law by appointing [Tom] as successor Trustee?

Appellant's Brief at 3.

_____

[3] The Orphans' Court pointed out, and we likewise recognize, that Appellant's Rule 1925(b) statement is overly lengthy. It spans 8 pages and contains 31 paragraphs, each asserting a claim of Orphans' Court error or abuse of discretion. We remind Appellant's counsel that a Rule 1925(b) statement "shall set forth only those rulings or errors that the appellant intends to challenge" and "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." **See** Pa.R.A.P. 1925(b)(4)(i)-(ii). Nonetheless, because the Orphans' Court discerned that the "numerous paragraphs . . . all essentially challenge the sufficiency and weight of the evidence," we do not find waiver. **See** Orphans' Court Opinion, 8/7/19, at 10.

At the outset, we note that all of Appellant's issues — as the Orphans' Court observed — relate to the weight of the evidence. We have explained:

> [W]e accord the findings of the Orphans' Court, sitting without a jury, the same weight and effect as the verdict of a jury; we will not disturb those findings absent manifest error; as an appellate court we can modify an Orphans' Court's decree only if the findings upon which the decree rests are not supported by competent or adequate evidence or if there has been an error of law, an abuse of discretion, or a capricious disbelief of competent evidence.
>
> Moreover, we will not reverse the Orphans' Court's credibility determinations absent an abuse of the court's discretion as factfinder. On the other hand, we are not required to give the same deference to the Orphans' Court's legal conclusions. Where the rules of law on which the Orphans' Court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*Estate of Edward Winslow Taylor Inter Vivos Trust*, 169 A.3d 658, 663 (Pa. Super. 2017) (citation omitted).

> "In interpreting a trust instrument, the intent of the settlor is paramount and if that intent is not contrary to law, it must prevail." The settlor's intent is to be determined from all the language within the four corners of the trust instrument, the scheme of distribution, and the circumstances surrounding the execution of the instrument. "Only when the language of the trust is ambiguous or conflicting or when the settlor's intent cannot be garnered from the trust language do the tenets of trust construction become applicable." However great the temptation is to supply terms in accordance with what the settlor presumably would have provided had the omission been called to his attention, the court is without power to reform an unambiguous instrument.

*In re Ins. Trust of Agreement of Sawders*, 201 A.3d 192, 197 (Pa. Super. 2018) (citations omitted). Additionally: "The scope of authority under a POA is determined by the language of the document creating the agency and the Code. *See generally* 20 Pa.C.S. §§ 5601-5611[.]" *In re Fiedler*, 132 A.3d

1010, 1021 (Pa. Super. 2016) (*en banc*) (one citation omitted).

Instantly, after careful review of the record and prevailing authority, we conclude that no relief is due. In addressing Appellant's claims, the Orphans' Court thoroughly assessed the evidence. The Orphans' Court specifically found Dr. Lawler's opinion — that Sister had "severely impaired learning and memory abilities" and was "not competent to make medical and financial decisions" — to be credible, while Appellant's testimony denying that Sister was an alcoholic was "disingenuous." **See** Orphans' Court Opinion, 8/7/19, at 16, 18-22. Further, the Orphans' Court found the evidence "clearly revealed" that Appellant "abused the circumstances surrounding [S]ister's mental incapacity, and had acted with unclean hands" by, for example, "urgently" obtaining Sister's signatures for the Trust amendments but concealing this conduct from Tom. **Id.** at 15-17. The Orphans' Court also considered the plain language of the Trust, including Section 3.02's statement that a "Successor Trustee" . . . "shall serve singly and successively, and not jointly"; Section 9.03's provision that generally, only the Settlor — *i.e.*, Decedent — could modify the Trust; and Section 4.01(b)'s requirement that if the Settlor were incapacitated, then a **duly appointed** attorney-in-fact, acting under a power-of-attorney that specifically granted such authority, could amend the Trust. **See id.** at 3, 12, 15. In considering this last provision, the Orphans' Court emphasized that Appellant's purported authority as attorney-in-fact arose from the 2009 POA, which did not specifically grant the attorney-in-fact

authority to amend any trust. ***Id.*** at 13-14.

On appeal, Appellant disregards the Orphans' Court's extensive discussion and cites only the evidence advantageous to her. To the extent Appellant would have this Court reweigh the evidence and supplant the Orphans' Court's credibility findings with our own, that is not our role. ***See Estate of Edward Winslow Taylor Inter Vivos Trust***, 169 A.3d at 663. Thus, after careful review of the certified record, the Orphans' Court's May 3, 2019 Decree and Decision, the Orphans' Court's August 7, 2019 opinion, and the parties' briefs, we find no merit to Appellant's claims the that Orphans' Court abused its discretion by making the factual findings that Appellant abused her relationship with Sister, and that Sister lacked the necessary capacity to execute the documents amending the Decedent's Trust. Thus, consistent with its factual findings, the Orphans' Court did not err by invalidating Sister's September 30, 2014 appointment of Appellant as co-trustee, and invalidating the three trust amendments dated January 19, 2015, January 20, 2015 and February 2, 2015.

There is no merit to Appellant's first claim that the Orphans' Court erred in invaliding Sister's September 30, 2014 appointment of Appellant as co-trustee. ***See*** Orphans' Court Opinion, 8/7/19, at 3, 12 (the plain language of Section 3.02 of the Trust "provided for the appointment of successor trustees who 'shall serve singly and successively, and not jointly"; the Trust did not authorize a trustee to appoint a co-trustee absent the total inability of all of

the named successor trustees to serve; Section 9.03 "directs that the Trust cannot be amended other than by a written document executed by [Decedent]," and whereas Section 4.01(b) allowed a duly appointed attorney-in-fact with written authority specifically to amend a trust, the 2009 POA did not give the attorney-in-fact such specific authority, and Appellant was not an attorney-in-fact under the 1994 POA).

With respect to Appellant's second claim, we do not disturb the Orphans' Court's determination that neither Appellant nor Sister had authority to execute the three Trust amendments. *See* Orphans' Court Opinion, 8/7/19, at 13-15 (Decedent's 2009 POA did not grant the agent (Sister) authority to modify the terms of the Trust; Trust likewise did not grant the trustee (Sister) authority to unilaterally modify the Trust provisions; and even if, as Appellant claims, Decedent's 1994 POA granted the attorney-in-fact (who was always Sister) authority to amend the Trust, Appellant presented no evidence that she was ever the attorney-in-fact under that POA).

Third, the evidence supports the Orphans' Court finding that Sister lacked capacity to execute the three Trust amendments. *See* Orphans' Court Opinion, 8/7/19, at 19-21 (Dr. Lawler examined Sister and credibly opined that Sister lacked mental capacity to knowingly, intelligently, and voluntarily execute the Trust amendments; Appellant's attempt to discredit Dr. Lawler was meritless; and the testimony of Appellant and Charlie that Sister was not an alcoholic, was "disingenuous and self-serving").

Next, we reject Appellant's fourth claim that the Orphans' Court erred in finding she and Sister had a confidential relationship and that Appellant abused that relationship. *See* Orphans' Court Opinion, 8/7/19, at 24 (Appellant and Sister were sisters, jointly cared for their mother, and, with their families, shared vacations; evidence "clearly revealed that Appellant exerted an overmastering dominance over [Sister], who in turn exhibited a dependence upon, and trust in, Appellant, as exemplified by Appellant's "surreptitiously" obtaining Sister's signatures without Tom's knowledge).

Finally, we discern no error in the Orphans' Court appointment of Tom as the successor trustee. *See* Trust, 4/20/94, at 5 (Sister, Appellant, Tom, and Charlie shall serve, in this order, singly and successively as "Successor Trustees"); Orphans' Court Opinion, 8/7/19, at 18 ("The evidence was clear that [Sister] cannot adequately serve as Trustee given her cognitive impairments"; Appellant is "an inappropriate person to serve as successor trustee[; and] the next named successor trustee according to the explicit terms of Section 3.02" was Tom).

In sum, the record supports the Orphans' Court factual findings and legal determinations. We therefore affirm the May 3, 2019 Decision and Decree.

Decree affirmed.

- 11 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/3/20