544 A.2d 67

**In re the ESTATE OF George TASHJIAN, Deceased.**

**Appeal of Violet TASHJIAN, Widow of George Tashjian, Deceased.**

**For: Trustee for Estate of George Tashjian.**

Superior Court of Pennsylvania.

Argued Feb. 3, 1988.

Filed July 5, 1988.

222

Thomas J. Beagan, Jr., Media, for appellant.

Joseph E. Lastowka, Jr., Media, for appellee.

Before BECK, KELLY and JOHNSON, JJ.

BECK, Judge:

The issue is whether a trustee should consider the independent financial resources of a beneficiary when determining whether to invade the corpus of a trust fund established for the support and maintenance of the beneficiary. This is an appeal by Violet Tashjian, the widow of George Tashjian, from an order denying exceptions to the dismissal of a petition to invade the principal of a testamentary trust fund. We affirm the order of the trial court.

On August 2, 1983, George Tashjian executed a will. The relevant provisions read as follows:

III. *Residue:* I give, devise and bequeath all the residue of my estate, of whatever nature and wherever situate, to my Trustee, hereinafter named, IN TRUST, as follows:

A. If my said wife survives me, my Trustee shall pay the net income to my said wife, quarterly, or more frequently, for life. In addition, my Trustee may expend such amounts of principal as my Trustee, in her sole discretion, determines necessary for the support and maintenance of said wife.

B. Upon the death of my said wife, my Trustee shall pay the then remaining balance of the principal of this Trust and any accumulated income to ALICE ZARZATIAN and DORIS VAN METER their heirs forever, equally share and share alike.

. . . .

VII. *Executor and Trustee:* I appoint ALICE ZARZATIAN of 115 Green Valley Road, Upper Darby, Pennsylvania, Executrix of and Trustee under this Will. I further direct that my said Executrix and Trustee shall not be required to enter bond or furnish securities in any jurisdiction.

. . . .

X. *Disinheritance of Son:* I recognize that by this Will I have disinherited my son HAGOP TASHJIAN, also known as JACK TASHJIAN, and it is my specific intention to do so.

George Tashjian died on September 2, 1983. He was survived by his wife Violet and his disinherited son Jack. Prior to the instant litigation, Violet and Jack appealed from a decision of the Register of Wills admitting the will to probate. On April 25, 1985, the parties to the appeal reached an agreement in open court before the Honorable Francis J. Catania of the Court of Common Pleas of Delaware County. Pursuant to this agreement, the appeal was withdrawn with prejudice, and Alice Zarzatian resigned as trustee under the will. The court appointed Michael M. Emuryan, Esq. to serve as trustee in place of Alice Zarzatian.

Mr. Emuryan soon realized that the trust would generate only a modest annual income.[1] He filed a petition in which he requested that the court schedule a hearing in order to determine if a portion of the trust principal should be paid to Mrs. Tashjian. A hearing was held on July 1, 1986. At the hearing, Mr. Emuryan declined to take a position for or against an invasion of the trust principal. He testified as follows:

MR. EMURYAN:

... I have had a chance to meet with the widow, Violet Tashjian, who is represented by Thomas Beagan. The remaindermen, if I can call them that are represented by Joseph Lastowka of our bar. I have met with Mrs. Tashjian with a translator and Tom last year to determine her needs because there's a provision in the Will which is really the issue today concerning how much I pay, taking against the Will. Taking an amount which may conceivably reduce the estate and affect the remainder interest. Since I can't really decide the extent of her needs, I have my own ideas. I petitioned for instructions on how I should handle the request for income because there is a provision of the Will which could conceivably be construable to permit invasion.

. . . .

1. The parties agree on appeal that the trust yields' approximately $5000 of income per year.

THE COURT:

All right, what's the problem? You have a limited amount of income here ...

MR. EMURYAN:

Right.

THE COURT:

And the question is whether or not the trust instrument allows you to invade the principal to take care of her needs and you're unable to ascertain the extent of her needs, right?

MR. EMURYAN:

Right. I have my own ideas but I don't want to make the call, sir.

N.T. at 19a–20a and 21a–22a.

The court then sought information concerning Mrs. Tashjian's financial needs. The parties agreed that Mrs. Tashjian's annual expenses were approximately $14,000. Counsel for Mrs. Tashjian, however, refused to disclose to the court whether Mrs. Tashjian had any substantial assets at her disposal. He maintained that Mrs. Tashjian was entitled to payments from the trust for her maintenance and support regardless of whether she could pay her expenses from other sources.

On the other hand, counsel for the remaindermen argued that under the decedent's will, the corpus of the trust should be left intact until Mrs. Tashjian demonstrated that an invasion of the principal was *necessary* in order for her to pay her expenses. The remaindermen called as a witness Alvin S. Ackerman, Esq., the scrivener of the will, who provided testimony in support of the remaindermen's interpretation of the trust provision. Counsel for Mrs. Tashjian did not object to this testimony.

On July 2, 1986, the court issued an order denying the petition to invade the principal and directing the trustee to continue to pay Mrs. Tashjian only the trust income. Mrs. Tashjian filed exceptions which were denied on March 17, 1987. On appeal, she contends that the trial court miscon-

strued her late husband's will, and that her assets should not be taken into account when determining her eligibility for payments of trust principal. We find that this claim is without merit.

■ The question of whether a trustee should consider the independent resources of a trust beneficiary has been frequently litigated in Pennsylvania and in other jurisdictions. *See generally* Annotation, *Other Means: Propriety of Considering Beneficiary's Other Means under Trust Provision Authorizing Invasion of Principal on Behalf of Life Beneficiary,* 41 A.L.R.3d 255 (1972). In the majority of cases, Pennsylvania courts have concluded that by establishing a testamentary trust, the testator intended to relieve the beneficiary of the need to pay for living expenses out of her own funds. *See, e.g., Greenwald's Estate,* 345 Pa. 119, 26 A.2d 918 (1942); *Baylor's Estate,* 249 Pa. 5, 94 A. 442 (1915); *Swinson's Estate,* 167 Pa.Super. 293, 74 A.2d 485 (1950); *Minnich v. Peoples Trust, Savings and Deposit Co.,* 29 Pa.Super. 334 (1905). In *Demitz' Estate,* 417 Pa. 316, 208 A.2d 280 (1965), the Pennsylvania Supreme Court summarized the case law on this subject by stating that: "Where a trustee has been given discretionary power to invade principal, the general rule is that the existence of an independent estate by a wife is not sufficient justification for a trustee's refusal to pay principal for her maintenance and support." 417 Pa. at 320, 208 A.2d at 282. Thus, in the absence of evidence of a contrary intent, an ambiguous trust provision should ordinarily be viewed as authorizing the invasion of trust principal even where the beneficiary has access to substantial income from other sources.

■ Nevertheless, the general rule described in *Demitz' Estate* should not be rigidly or mechanically applied. In any case involving the interpretation of a testamentary trust, the primary goal of the court is to effectuate the intent of the testator. *See Pearson's Estate,* 442 Pa. 172, 180, 275 A.2d 336, 339 (1971). Moreover, in order to ascertain testamentary intent, a court must focus first and foremost on the precise wording of the will, and if an

ambiguity exists, on the circumstances under which the will was executed. *See Taylor's Estate,* 480 Pa. 488, 494, 391 A.2d 991, 994 (1978). Only if the testator's intent remains uncertain may the court then resort to general rules of construction. *Id.*

In *Lang v. Department of Public Welfare,* 515 Pa. 428, 528 A.2d 1335 (1987), the Pennsylvania Supreme Court recently clarified the standard used in determining when a trust beneficiary may compel distribution of trust assets. In *Lang,* the testator established a trust to pay the costs necessary for the support of his mentally disabled son. The Department of Public Welfare withheld medical assistance payments from the son on the grounds that trust assets were available to pay for the cost of his care at a state mental retardation center. On appeal, the Court held that the trust funds could not be counted as an available resource. In reaching this decision, the Court noted that:

> We must ... determine whether a settlor, here the testator, intended that trust assets be used to support a beneficiary, regardless of the availability of other resources, including state assistance. A settlor's intent must be determined "from all the language within the four corners of the trust instrument, the scheme of distribution and the circumstances surrounding the execution of the trust instrument." *Farmers Trust Co. v. Bashore,* 498 Pa. 146, 150, 445 A.2d 492, 494 (1982).

515 Pa. at 441, 442, 528 A.2d at 1342. The Court carefully reviewed the text of the trust, which specifically granted the trustee complete discretion to withhold payments of trust principal, and considered extrinsic evidence concerning the son's receipt of state assistance during the testator's lifetime. Under these circumstances, the Court concluded that the trust was not designed to pay costs which could be paid from other sources.

As *Lang* illustrates, the fact that a will establishes a trust for the beneficiary's support does not create an irrebuttable presumption that all of the beneficiary's living expenses must be funded from the trust. *See also Sea-*

*christ's Estate,* 362 Pa. 190, 66 A.2d 836 (1949) (interpreting will as providing that beneficiary must prove dependency before tapping trust principal). In every case where the trust is ambiguous, the court must conduct an individualized inquiry in order to ascertain the intent of the settlor. This case by case approach is consistent with Pennsylvania precedent and reflects the majority rule in other jurisdictions. As one commentator has noted:

> It is a question of interpretation whether the beneficiary is entitled to support out of the trust fund even though he has other resources. Where the trustee is directed to pay to the beneficiary or to apply for him so much as is necessary for his maintenance and support, the inference is that the settlor intended that he should receive his support from the trust estate, even though he might have other resources. The settlor may, however, manifest an intention that the trust property should be applied to his support only if and to the extent that he is in actual need, in which case he is not entitled to support out of the trust fund if he has other sufficient resources.

2 A. Scott, *The Law of Trusts,* § 128.4 at 353–55 (4th ed. 1987). *Cf.* Restatement (Second) of Trusts § 128 comment i (1959) (whether trustee may properly use principal for beneficiary's support where beneficiary has property of his own depends upon language of trust instrument as interpreted in light of the circumstances).

In the case sub judice, the will is silent as to whether the payments necessary for Mrs. Tashjian's support should be calculated without reference to her separate estate. However, two factors support the trial court's conclusion that the extent of her separate estate should be taken into account before the trust corpus is exploited for her benefit.

First, the testator specifically provided that "[M]y Trustee may expend such amounts of principal as my Trustee, *in her sole discretion,* determines necessary for the support

and maintenance of my said wife." (emphasis added).[2] This reference to the trustee's sole discretion with respect to the principal is particularly striking when contrasted with the testator's general statement that "... my Trustee shall pay the net income [of the trust] to my said wife...." The use of an adjective which emphasizes the especially broad or exclusive nature of a trustee's discretion is evidence that the trustee was granted authority to withhold trust funds from a beneficiary with independent resources. In *Lang*, the Court emphasized the "complete discretion" conferred upon the trustee by the trust instrument. 515 Pa. at 442, 528 A.2d at 1343. The Court also cited with approval two cases from other jurisdictions in which the trustee's decision to consider the beneficiary's resources was approved on account of the "absolute discretion" afforded by the terms of the trust. 515 Pa. at 444, 528 A.2d at 1344 (citing *Auchincloss v. City Bank Farmers Trust Co.*, 136 Conn. 266, 70 A.2d 105 (1949) and *In re Watson's Will*, 286 A.D. 950, 142 N.Y.S.2d 731 (1955)).

In the instant case, the will entrusted the trustee with considerable discretion as to the distribution of the trust principal. Since the trustee refused to recommend invasion of the principal, and since the trustee asked the trial court to decide the question, we are reluctant to disturb the trial court's determination.

Furthermore, as in the *Lang* case, "[t]he circumstances surrounding the execution of the [the trust] instrument point strongly to testator's intent to have his trustee consider other resources." 515 Pa. at 443, 528 A.2d at 1343.[3] At

---

2. *Stoudt v. Department of Public Welfare*, 76 Pa.Commw. 576, 464 A.2d 665 (1983), is the only appellate decision cited by the parties in which the trust instrument referred to the trustee's "sole discretion" concerning the payment of funds to the beneficiary. In *Stoudt*, the Commonwealth Court held that the trustee was obligated to pay for medical care that would otherwise have been funded by a state assistance program. However, the *Stoudt* decision was criticized by the Pennsylvania Supreme Court in *Lang v. Department of Public Welfare*, 515 Pa. at 439-40, 528 A.2d at 1341-42.

3. Appellant contends that the trial court should not have considered extrinsic evidence of testamentary intent. A court may not stray

the time the will was written, testator's widow was seventy-seven years old and could not speak English. Mr. Ackerman, the scrivener of the will, testified that he had known the testator and his wife for twenty-five years, that they had lived in a frugal manner, and that Mrs. Tashjian had no experience handling substantial sums of money. Mr. Ackerman also testified that the testator distrusted his son Jack, whom he disinherited, and that the testator had repeatedly expressed concern that Jack might steal money from Mrs. Tashjian. Finally, Mr. Ackerman noted that he had informed the testator that in addition to any bequest received under the will, and in addition to Social Security benefits, Mrs. Tashjian had a survivorship interest in all property which the couple owned by the entireties; this included bank certificates as well as unencumbered real estate which could be rented to a commercial establishment. This testimony indicates that the testator intended that the trust corpus would serve as a reserve for the widow in the event that her income from other sources proved inadequate to meet her needs.

We conclude that the trial court properly dismissed the petition requesting authorization for the invasion of trust principal. We note, however, that if appellant supplies the trustee with full information on her financial status, the trustee should reconsider whether an invasion of trust principal is appropriate under the terms of the will.

Order affirmed.

beyond the four corners of the will where the terms of the will are clear and unambiguous. *Kelly's Estate*, 473 Pa. 48, 373 A.2d 744 (1977). However, if a provision of the will is ambiguous on its face, the court may inquire into the circumstances which surrounded the testator at the time of the will's execution. *See Estate of McKenna,* 340 Pa.Super. 105, 489 A.2d 862 (1985); *Estate of Schwarzbarth,* 320 Pa.Super. 191, 466 A.2d 1382 (1983). The Tashjian will is ambiguous since the "amounts ... necessary for the support and maintenance of my said wife" could refer to the cost of all of the wife's living expenses, or to the cost of only those living expenses which the wife could not pay from her own independent resources.