J-A04036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: GARY W. THOMSON | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: JAMES W. THOMSON-CALIENDO | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1075 EDA 2019 |

Appeal from the Order Entered March 19, 2019
In the Court of Common Pleas of Pike County Civil Division at No(s):  31-2018 OC

BEFORE:   PANELLA, P.J., STRASSBURGER, J.[*], and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED JUNE 23, 2020**

This appeal arises out of the March 19, 2019 order of the orphans' court relating to the trust established by Eleanor R. Thomson (Eleanor) in her will for the benefit of her son Gary Wayne Thomson (Gary).  James William Thomson-Caliendo (James), the trustee of the trust and also Gary's brother, appeals from the order arguing that it infringes on his discretion, reduces certain obligations that the trust imposed upon Gary, and improperly ordered an award of attorneys' fees from the trust in favor of Gary.  We affirm the order in part, vacate it in part, and remand for further proceedings consistent with this decision.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Eleanor died on February 8, 2014 leaving a will that divided her estate in equal shares among her five children. Exhibit P-1, Eleanor Thomson Will ¶1. The will provided that Gary's share would be placed in trust as follows:

> If my son GARY WAYNE THOMSON survives me, I direct that the share of my estate distributable to him shall be retained by my Trustee, hereinafter named, IN TRUST, to invest and reinvest the same, to collect the income, and after paying all expenses incident to the management of the Trust, to use and apply as much of the net income and principal as may be necessary, in the sole and absolute discretion of my Trustee, for GARY's maintenance, support, and well-being, provided that GARY has proven to the satisfaction of my Trustee, in my Trustee's sole and absolute discretion, that GARY is and remains alcohol and drug free, capable of holding employment, and capable of making responsible financial decisions.

*Id.* ¶2. The will further provided that any remaining trust funds at Gary's death would be distributed equally to his two sons, *per stirpes*. *Id.*

On May 25, 2018, Gary filed a petition to terminate the trust or, in the alternative, to remove James as the trustee; Gary also sought distributions from the trust for his living expenses.[1] A hearing was held in the orphans' court on September 10, 2018. The testimony and evidence submitted at the

---

[1] Although Eleanor died in Philadelphia and the will was probated there, Gary filed the petition in Pike County, where he resides. James did not argue below that venue was improper in the Court of Common Pleas of Pike County. *Cf.* 20 Pa.C.S. § 722 ("When a Pennsylvania court has jurisdiction of any trust, testamentary or inter vivos, except as otherwise provided by law, the venue for all purposes shall be in the county where at the time being is the situs of the trust. The situs of the trust shall remain in the county of the court which first assumed jurisdiction of the trust, unless and until such court shall order a change of situs under the provisions of this chapter."); 20 Pa.C.S. § 7708(b)(1)(i) (providing that the situs of a testamentary trust is where letters were granted to the personal representative).

- 2 -

hearing demonstrated that Gary, who was 55 at the time of the hearing, was living in a dilapidated travel trailer parked on his friends' property in Pike County. Gary testified at the hearing that the trailer had a leaky roof and insufficient heating and that he owed at least $10,000 in rent. Gary testified that he also owed over $17,000 to the IRS in back taxes and interests from the 2015 tax year, which resulted in the IRS filing a lien against him. Gary owns a pickup truck that requires a new transmission and other substantial repairs in order to be brought into working condition. Gary, who had worked as a union roofer in Philadelphia from the age of 17, sustained a serious shoulder injury, and, in July 2018, the Social Security Administration determined that he was disabled and eligible for $750 monthly Supplemental Security Income (SSI) disability benefits, back-dated from the date of his application in January 2018.

Gary acknowledged at the hearing that he had previously abused drugs and alcohol, and that, at the time of his mother's death, he was incarcerated on a 90-day sentence for "[d]riving on a DUI suspended license." N.T., 9/10/18, at 50. However, Gary successfully completed a drug and alcohol rehabilitation program in 2017, and he testified at the hearing that he remained drug and alcohol free through the date of the hearing. Gary submitted into evidence reports from three negative drug and alcohol urine tests from March, May, and August 2018.

Gary and James are estranged and, prior to the hearing, had not spoken since their father's funeral in 2002. The correspondence submitted into

evidence between Gary and James likewise reveals a difficult history of the administration of the trust. Gary had begun requesting funds from the trust to pay for his living expenses as early as February 2016, but James had not made any distributions until Gary submitted the results of his first urine test; James then issued three distributions between April and June 2018 totaling approximately $6,200. The trust was managed by Charles Schwab and had a value of over $715,000 as of December 2017, having grown from approximately $567,000 in March 2016. Gary submitted expense statements to the orphans' court and testified regarding the distributions he sought from the trust, including $169,000 for the purchase of a three bedroom home, $10,000 for repairs to his truck, and funds to pay his IRS debt and back rent for his trailer, in addition to his regular monthly expenses.

Following an unsuccessful settlement conference, the orphans' court issued an opinion and order on March 19, 2019. In its order, the orphans' court denied Gary's petition to the extent it sought to terminate the Trust or remove James as trustee. Order, 3/19/19, ¶¶1-2. However, the orphans' court directed James to make the following distributions within 20 days of the order: (i) issue a check payable to Gary's attorney to satisfy the negotiated IRS lien; (ii) issue a check to Gary's attorney in the amount of $13,957.10 for legal fees through December 31, 2018 and any additional amount of accrued legal fees; and (iii) issue a check to Gary in the amount of $40,000, representing eight monthly payments of $5,000 per month from the date of the hearing through the date of the order. *Id.* ¶3. The orphans' court further

directed James to make future monthly payments of $5,000 to Gary upon Gary submitting proof quarterly that he is substance and alcohol free. *Id.* ¶4. The order also provided that Gary "shall be permitted to select his own health insurance plan" and that James "shall not deny Gary [] adequate housing." *Id.* ¶¶5-6.

In its opinion, the orphans' court found that James had seriously breached his duties as trustee, had not acted in good faith, and that the purpose of the trust was not being fulfilled. Opinion, 3/19/19, at 6 (citing 20 Pa.C.S. § 7766 (relating to removal of trustee)). The court based these determinations on the fact that James had undertaken no efforts to understand Gary's dire financial situation and he had the unrealistic expectation that Gary could survive on under $24,000 per year. *Id.* at 6-7. Moreover, the court noted that the relationship between the brothers on a personal level is non-existent and James has made unrealistic, excessive demands in correspondence with Gary. *Id.* at 2.

The court, however, declined to remove James as trustee because there was insufficient evidence that either their sister Jennifer, who was designated as the successor trustee in Eleanor's will, or any other party was willing and able to replace James as trustee. *Id.* at 7-8. The orphans' court also declined to terminate the trust because no testimony was adduced as to how Gary would manage the funds if they were disbursed to him and the funds were being well-managed. *Id.* at 8. The orphans' court also found that all of the distributions requested by Gary and the expenses noted in his presentation to

the court were reasonable.  *Id.* at 10-11.  The orphans' court based its distribution on expense statements submitted by Gary, which did not incorporate his SSI income or his food stamp and other benefits.  *Id.*; *see also* Exhibits P-17, P-18.

Regarding the three conditions imposed on Gary pursuant to the trust, the orphans' court found that testing was the only reasonable manner by which Gary could substantiate that he was not using drugs or alcohol, but James had not distributed any funds to allow Gary to pay for the tests or to arrange transportation to get to a testing site.  *Id.* at 5.  The court further found that the obligation that Gary be capable of employment could no longer be seen as a trust requirement because Gary had been determined to be disabled by the Social Security Administration.  *Id.*  With regard to the requirement that Gary be "capable of making responsible financial decisions," the court concluded that this requirement is so vague as to be unenforceable and that, apart from the fact that Gary had accrued over $17,000 in debt to the IRS, James had not submitted any other evidence to substantiate that Gary could not manage his finances.  *Id.* at 5-6.

James filed a timely appeal of the orphans' court's March 19, 2019 order.[2]  James raises the following issues on appeal:

> A. Did the orphans' court err as a matter of law when it deviated from the settlor's intent by disregarding the trust require[ment]

---

[2] James filed his concise statement of errors complained of on appeal on May 8, 2019.  The orphans' court filed its Rule 1925(a) opinion on June 3, 2019, in which it relied on the reasons stated in its March 19, 2019 opinion.

that the beneficiary must satisfy the trustee of his sobriety, employment and financial situation before being eligible for a trust distribution?

B. Did the orphans' court err as a matter of law when it misinterpret[ed] the settlor's intent by not allowing the trustee to consider the beneficiary's government benefits when making a distribution, and instead, ordered a direct payment from the trust to the beneficiary which disqualified him from benefits?

C. Did the orphans' court abuse its discretion by ignoring the beneficiary's duty to provide information to the trustee and then relying on information not available to the trustee in determining he abused his discretion, and ordering distributions which will allow the beneficiary to determine the amounts to be distributed?

D. Did the orphans' court err by ordering the beneficiary's attorney's fees be paid from the trust even though there is no legal authority for doing so, and when the amount awarded was unspecified and unsupported by the record?

James' Brief at 5 (unnecessary capitalization omitted).

When reviewing an order entered by the orphans' court, the "decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *In re Estate of Leipold*, 208 A.3d 507, 510 (Pa. Super. 2019) (citation omitted). We review the orphans' court's findings of fact with deference to determine "whether the record is free from legal error and the court's factual findings are supported by the evidence." *Id.* (citation omitted). The orphans' court, as fact-finder, determines the credibility of the witnesses and as such its credibility determinations will not be reversed absent an abuse of that discretion. *Id.*

The interpretation of a trust presents a question of law. *In re Jackson*, 174 A.3d 14, 29 (Pa. Super. 2017). As such, our standard of review is *de*

*novo*, and our scope of review is plenary. ***Id.*** We are guided by the following principles in interpreting a trust:

> In interpreting a trust instrument, the intent of the settlor is paramount and if that intent is not contrary to law, it must prevail. The settlor's intent is to be determined from all the language within the four corners of the trust instrument, the scheme of distribution, and the circumstances surrounding the execution of the instrument. Only when the language of the trust is ambiguous or conflicting or when the settlor's intent cannot be garnered from the trust language do the tenets of trust construction become applicable. However great the temptation is to supply terms in accordance with what the settlor presumably would have provided had the omission been called to his attention, the court is without power to reform an unambiguous instrument.

***In re Insurance Trust Agreement of Sawders***, 201 A.3d 192, 197 (Pa. Super. 2018) (citations and quotation marks omitted).

**I.**

In his first issue, James challenges the orphans' court's order to the extent it imposed the following prospective monthly distributions:

> 4. Trustee James [] shall forthwith issue a monthly check in the amount of $5,000 beginning April 1, 2019 to Gary [] upon proof of Gary's being substance and alcohol free. Gary shall provide proof of same quarterly beginning April 1, 2019 and every three (3) months thereafter.

Order, 3/19/19, ¶4. James argues that the orphans' court's order "completely discards the settlor's intentions in favor of new less restrictive Trust terms" and "took away James' sole and absolute discretion to make maintenance, support and well-being decisions." James' Brief at 23. James contends that the orphans' court removed entirely two of the requirements set forth in the

will by holding that Gary need not show that he was capable of employment because he was receiving SSI disability benefits and that the requirement that Gary make responsible financial decisions was vague and imposed no workable standard. James argues that the orphans' court improperly limited the third requirement – that Gary remain drug and alcohol free – to only quarterly drug and alcohol tests. Finally, James argues that the court's fashioning of a prospective remedy at a fixed $5,000 per month payment does not afford James the discretion he was granted in the trust instrument and "allows no sensitivity to [Gary's] changing needs and the Trust's performance." *Id.* at 24-25.

We agree with James that the orphans' court's improperly restricted the trustee's oversight of Gary's compliance with the trust requirements. "Pennsylvania follows the view of the Restatement of Trusts that when discretion is conferred upon a trustee with respect to the exercise of a power, its exercise is not subject to control by the courts, except to prevent an abuse by the trustee of his discretion." *In re Scheidmantel*, 868 A.2d 464, 481 (Pa. Super. 2005) (citing Restatement (First) of Trusts § 187 (1929)). "Generally, this Court will not interfere with the exercise of a discretionary power by a trustee unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of reasonable judgment." *Id.* at 482 (citation and quotation marks omitted). However, a court may interfere in the trustee's exercise of his duties when the trustee

acts outside the bounds of reasonable judgment, "[n]o matter how wide the field within which" the trustee is empowered to act. *Id.* at 481.

The will provides that James, as trustee, shall apply income and principal of the trust for Gary's maintenance, support, and well-being so long as Gary "has proven to the satisfaction of" James, in his "sole and absolute discretion," that Gary "remains alcohol and drug free, capable of holding employment, and capable of making responsible financial decisions." Exhibit P-1, Eleanor Thomson Will ¶2. The plain language makes clear Eleanor's intention that Gary was required to alter his behavior in these three ways before he would be entitled to his share of her estate and that Gary's brother, James, would serve as the sole arbiter of Gary's compliance. We place special emphasis on the fact that Eleanor provided the trustee with the "sole" and "absolute" discretion, which demonstrated the broadness of the zone of discretion in which the trustee can act. *See Lang v. Department of Public Welfare*, 528 A.2d 1335, 1342-43 & n.10 (Pa. 1987) (noting that a trust document's use of qualifiers such as "complete," "absolute," or "unlimited" demonstrate a broadened, albeit not entirely unconstrained, zone of discretion for a trustee); *In re Estate of Tashjian*, 544 A.2d 67, 71 (Pa. Super. 1988) (the use of the adjective "sole" in reference to a trustee's discretion "emphasizes the especially broad or exclusive nature of a trustee's discretion"). As the orphans' court put it, Eleanor's intention was "to impose restrictions on the trust monies available to Gary to ensure that he remained on a healthy path." Opinion, 3/19/19, at 3.

The orphans' court's decision, however, effectively supplanted the authority entrusted to James under the will and shifted the burden to James to prove that Gary was not adhering to the trust's terms. First, the orphans' court's conclusion that Gary can satisfy the requirement that he remain drug and alcohol free solely through a quarterly urine test does not allow the trustee to devise a way to confirm that Gary remains substance-free in the intervals between tests. Second, while the orphans' court correctly determined that Gary's SSI disability currently renders him unable to resume work, Gary remains under a continuing obligation to demonstrate that his disability prevents future employment. Regarding the third requirement, while we agree with the orphans' court that the financial responsibility requirement is an amorphous standard, we cannot agree that the vagueness of the requirement renders it entirely unenforceable. Rather, as trustee, James was endowed with the authority to reasonably ensure that Gary was making responsible financial decisions through such efforts as requiring that Gary provide information on his expected and actual expenditures and confirmation that he was taking such essential actions as filing his taxes. Finally, we note that the orphans' court's imposition of a $5,000 monthly payment in perpetuity does not take into account any change in circumstances that might require that this amount be decreased or increased in order to provide for Gary's maintenance, support, and well-being.

Gary argues that the orphans' court's restrictions on James' authority as trustee should be affirmed because James did not meet his fiduciary duties

as trustee due in large part to his personal animosity to Gary. Gary contends that he was in fact in compliance with the terms of the trust and the orphans' court was required to ensure that Gary received necessary distributions. According to Gary, the orphans' court did not divest James of his discretion but rather rectified James' abuses of discretion by awarding Gary the trust funds to which he was rightfully entitled.

We agree with Gary that the record supports the orphans' court's conclusion that James showed a persistent unwillingness and inability to administer the trust in the interest of the beneficiary of the trust, Gary. *See* 20 Pa.C.S. § 7766(b)(3) (providing that a trustee's failure to "effectively administer[] the trust because of the trustee's unfitness, unwillingness or persistent failures" may serve as the basis for the trustee's removal); *In re Paxson Trust I*, 893 A.2d 99, 119 (Pa. Super. 2006) ("In general, the trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary." (citation, brackets, and quotation marks omitted)). Ample evidence was adduced at the orphans' court hearing showing James' inability to effectively communicate with Gary, his lack of understanding of and lack of curiosity to learn about Gary's living conditions, and his copious demands for information and releases from Gary, many of which were unnecessary for James' effective administration of the trust.[3]

_____

[3] In addition, we note a troubling June 17, 2016 letter in which James refused to respond to Gary's inquiries in two prior letters regarding the status of the

However, the record does not reflect any deficiencies in James' performance as trustee with respect to his determinations of Gary's compliance with the three trust requirements. Gary first submitted proof of his negative drug and alcohol tests in April 2018, at which point James initiated three provisional monthly distributions to Gary. Furthermore, Gary did not submit documentation substantiating his disability or receipt of SSI benefits until the date of the hearing. Likewise, Gary refused to provide James with any documentation of his expenses until the hearing. Thus, to the extent the

_____

trust because Gary had stated in his letters that he had received advice from an attorney. Exhibit R-1, at 16. James improperly invoked Pennsylvania Rule of Professional Conduct 4.2, which prohibits attorney communications to a person represented by counsel, as the basis for his refusal to respond to Gary even though James is not an attorney. *Id.*; *see* Pa.R.P.C. 4.2, Explanatory Comment 4 ("Parties to a matter may communicate directly with each other, and a lawyer is not prohibited from advising a client concerning a communication that the client is legally entitled to make."). Separately, when Gary's counsel first wrote James in April 2018 with a letter addressed to the trustee's residence in Florida, an address Gary had previously used, James responded that Gary's counsel should write instead to his P.O. box and threatening to "ask the Court to admonish your office and move for a penalty for each and every prospective violation of this request." Exhibit R-3, at 344. James did not identify a legal basis for such "penalty."

We further observe that the relationship between the brothers had so soured that James hired – at the trust's expense – a "personal security escort" to accompany him to the orphans' court hearing based on his perception that Gary and his "clan" of "biker" friends were prone to violence. N.T., 9/10/18, at 125-26. While we understand that a certain amount of friction may be expected when one sibling serves as a trustee of a trust for the benefit of another sibling, we question whether a trustee can continue to serve in his role if he cannot appear at a court hearing with the beneficiary without fearing for his personal safety. *Cf.* Restatement (Third) of Trusts § 37, Comment e.1 (2003) (stating that an incurable breakdown in communications may justify the trustee's removal).

orphans' court had authority to oversee the prospective distributions to Gary, we conclude that the court abused its discretion by determining that Gary was and would remain in compliance with his obligations under the trust and by setting a fixed $5,000 distribution rate from which James could not increase or decrease the distributions as circumstances require.

## II.

In his next issue, James argues that the orphans' court erred by interpreting the trust as requiring distributions to Gary in a fixed amount without any consideration of Gary's government benefits or other sources of income. In support of this argument, James points to the terms of the trust that give the trustee sole discretion to apply as much of the trust principal and income as necessary for Gary's maintenance, support, and well-being. James also highlights the circumstances surrounding the creation of the trust, which James contends show that the Eleanor was aware of Gary's struggles with alcohol and drugs and she did not want to provide him with excess money that he could use to indulge in his habits.

In *Estate of Tashjian*, this Court summarized the relevant legal principles relating to this issue as follows:

> The question of whether a trustee should consider the independent resources of a trust beneficiary has been frequently litigated in Pennsylvania and in other jurisdictions. In the majority of cases, Pennsylvania courts have concluded that by establishing a testamentary trust, the testator intended to relieve the beneficiary of the need to pay for living expenses out of her own funds. In *Demitz' Estate*, 208 A.2d 280 (Pa. 1965), the Pennsylvania Supreme Court summarized the case law on this

- 14 -

subject by stating that: "Where a trustee has been given discretionary power to invade principal, the general rule is that the existence of an independent estate by a wife is not sufficient justification for a trustee's refusal to pay principal for her maintenance and support." 208 A.2d at 282. Thus, in the absence of evidence of a contrary intent, an ambiguous trust provision should ordinarily be viewed as authorizing the invasion of trust principal even where the beneficiary has access to substantial income from other sources.

544 A.2d at 70 (some citations omitted). However, the Court noted that this general rule "should not be rigidly or mechanically applied" and that "the primary goal of a court is to effectuate the intent of the testator." *Id.* The Court noted that this "individualized," "case-by-case approach" is consistent with the majority rule in other jurisdictions:

It is a question of interpretation whether the beneficiary is entitled to support out of the trust fund even though he has other resources. Where the trustee is directed to pay to the beneficiary or to apply for him so much as is necessary for his maintenance and support, the inference is that the settlor intended that he should receive his support from the trust estate, even though he might have other resources. The settlor may, however, manifest an intention that the trust property should be applied to his support only if and to the extent that he is in actual need, in which case he is not entitled to support out of the trust fund if he has other sufficient resources.

*Id.* at 71 (quoting 2 A. Scott, The Law of Trusts, § 128.4 at 353–55 (4th ed. 1987)).

In **Estate of Tashjian**, a husband left a portion of his estate in trust to his wife with the provision that she receive net income for life along with any other amount of principal that the trustee, "in her sole discretion, determines necessary for the support and maintenance of said wife." *Id.* at 68. This

- 15 -

Court found that the trustee could appropriately take into account the beneficiary's substantial other income; first, we noted that the trust granted the trustee with wide discretion in deciding whether to invade the trust principal. *Id.* at 71. In addition, this Court highlighted that the circumstances of the execution of the trust showed that the wife lived comfortably on the trust income and social security benefits, the wife had little financial literacy, and the husband intended the trust to keep the trust corpus from falling into the hands of a disinherited son. *Id.* at 71-72.

In the present case, we are not persuaded that the terms of the trust require a departure from the general rule that support payments should be made without regard to the beneficiary's other sources of income. *Demitz' Estate*, 208 A.2d at 282; *Estate of Tashjian*, 544 A.2d at 70. We acknowledge that the trust grants the trustee "sole and absolute discretion" to determine the distributions to be made for Gary's benefit, lending support to James' contention that he has complete authority to limit payments to Gary. Exhibit P-1, Eleanor Thomson Will ¶2; *see also Lang*, 528 A.2d at 1342-43 & n.10; *Estate of Tashjian*, 544 A.2d at 71. However, unlike in *Estate of Tashjian* where the beneficiary was not "in actual need" of trust principal distributions, 544 A.2d at 71-72, Gary's existing assets and income does not afford him a comfortable standard of living, but rather his SSI disability payments and food stamp benefits are the result of his impoverished financial

state; the parties agree that Gary will be required to forgo these benefits upon the receipt of trust distributions.[4]

Furthermore, while in **Estate of Tashjian** the trust provided for the payment of trust income and only so much of the principal as necessary to support the beneficiary, **id.** at 68, here the trust imposes no limitation on the spending of trust income, providing that the trustee shall "use and apply as much of the net income and principal as may be necessary" for Gary's "maintenance, support, and well-being."  Exhibit P-1, Eleanor Thomson Will ¶2.  We take particular note of the fact that the trust provides not only for Gary's maintenance and support, but also for his well-being; with this latter requirement, Eleanor expressed an intention to afford Gary a more comfortable lifestyle beyond provision for shelter, food, clothing and other bare essentials.  **See Lang**, 528 A.2d at 1342 ("The use of the words 'welfare and benefit' in addition to the usual 'support and maintenance' language in the first clause of [the trust], which defines the support standard, also indicates an intent to give [the] trustee the discretion to do more than ensure a minimum standard of living for [the beneficiary]."); **In re Swinson's**

_____

[4] James further argues that, because Gary's receipt of trust funds would disqualify him from SSI benefits pursuant to federal regulations, James should be permitted to make distributions on Gary's behalf rather than directly to Gary in order to protect his receipt of the benefits.  James appears to be arguing that Gary's SSI "disability" entitles him to convert the trust into a special needs trust.  **But see** 62 P.S. § 1414 (setting forth requirements to establish special needs trust).  James did not seek relief on this basis in the orphans' court, nor did the orphans' court rule on this issue; therefore, we will not address James' arguments on this point in this decision.

- 17 -

*Estate*, 74 A.2d 485, 486 (Pa. Super. 1950) (observing that a trust providing for the "care, support and maintenance" of a beneficiary – as opposed to merely "maintenance and support" – indicated an intention to provide for payment of funeral expenses even though not explicitly provided for in the trust); Black's Law Dictionary (11th ed. 2019) (defining "support" as "[s]ustenance or maintenance; esp., articles such as food and clothing that allow one to live in the degree of comfort to which one is accustomed"); Webster's Third New International Dictionary 2595 (2002) (defining "well-being" as "a condition characterized by happiness, health, or prosperity" and "moral or physical welfare").

Finally, we reject James' argument that the circumstances surrounding the creation of the trust evinced Eleanor's intention to only provide Gary with the bare minimum distributions for his living expenses so that Gary would not be tempted to use excess funds to purchase drugs and alcohol. The conditions imposed upon Gary's receipt of funds under the trust makes clear that he is only able to receive distributions from the trust upon showing that he is financially responsible, employed, and substance-free. Therefore, Eleanor expressed a prophylactic intention to keep trust funds from Gary until he had satisfied the trust requirements, but she did not intend to limit distributions to Gary for his maintenance, support, and well-being once he had reformed his unhealthy habits.

## III.

In his third appellate issue, James claims that the orphans' court abused its discretion in four respects.[5] First, James argues that the court abused its discretion by disregarding the remainder beneficiaries under the trust. The will provides that:

> In the event GARY dies before all such Trust funds are distributed, the balance of principal and in any accumulation of income remaining in the hands of my Trustee at the time of Gary's death shall be distributed equally to his children, CORY TRAVIS THOMSON and MARSHAL DAMIEN THOMSON, per stirpes.

Exhibit P-1, Eleanor Thomson Will ¶2. James argues that, as a result of the trust language, he "has a duty to balance the lifetime and remainder beneficiaries' interest." James' Brief at 35.

This argument misconstrues the interests of Gary's sons. Pennsylvania law provides that "[s]ubject to the specific language of the trust instrument, a trustee under Pennsylvania law must exercise discretion in preserving the balance of interests between successive beneficiaries." *In re Estate of Feinstein*, 527 A.2d 1034, 1037 (Pa. Super. 1987); *see also* 20 Pa.C.S. § 7773 (setting forth duty of impartiality where trust has more than one beneficiary); *In re Estate of Weiss*, 309 A.2d 793, 799 (Pa. 1973); *Scheidmantel*, 868 A.2d at 482. This duty of impartiality between successive beneficiaries attaches, however, in cases where the trust directs that income

---

[5] James raises four additional issues with the orphans' court's order and supporting opinion in his brief, which we have addressed in our analysis of James' first two appellate issues.

or a portion of the trust's assets be paid to one beneficiary for a set period or that beneficiary's lifetime, with the remainder to be paid to a different beneficiary. *See Estate of Weiss*, 309 A.2d at 799 (the rule of impartiality between successive beneficiaries applies "where the beneficiaries are successive, and occupy the positions of income beneficiary and remainderman"); *Estate of Feinstein*, 527 A.2d at 1035, 1037 (trustee was required to balance interests of beneficiaries where trust provided that 5% of net trust value be paid to two beneficiaries for their lifetime and, upon their death, remainder of assets would be paid to charity); Restatement (Third) of Trusts § 79, Comment e (2007); Restatement (Second) of Trust § 232, Comments b, d (1959). The duty to successive beneficiaries does not apply to a "wholly discretionary trust, which involves discretionary beneficial interests [] that, with or without standards (e.g., 'support') to guide the trustee, do not distinguish between income and principal sources and therefore allow the trustee to disregard income productivity in managing trust investments." Restatement (Third) of Trusts § 79, Comment f (2007).

The trust in this case provides the trustee with wide discretion to "use and apply as much of the net income and principal as may be necessary" for Gary's maintenance, support, and well-being. Exhibit P-1, Eleanor Thomson Will ¶2. No requirement is set forth that the trustee must reserve any income or principal to pay to Gary's sons upon Gary's death. Thus, with respect to Gary's sons, James currently owes no more of a duty than to administer the trust in good faith and preserve the assets of the trust. 20 Pa.C.S. §§ 7771,

7772, 7774; **Estate of Pew**, 655 A.2d 521, 542 (Pa. Super. 1994). No issue was raised with respect to James' management of the assets of the trust, and, therefore, the orphans' court did not err or abuse its discretion in failing to account for the interests of Gary's sons in its order and opinion.

Next, James argues that the orphans' court abused its discretion by ordering that Gary "shall be permitted to select his own health insurance plan." Order, 3/19/19, ¶5. James argues that this order impinged on his discretion as trustee to oversee distributions to Gary to the extent it could be interpreted to require the trust to write a "blank check" to cover the premium for any health insurance plan Gary selected. James' Brief at 36.

As the orphans' court explained in its opinion, Gary's health insurance was one of the many disputed issues at the hearing. Opinion, 3/19/19, at 9-10. In their correspondence, James urged Gary on several occasions to contact a non-profit in Philadelphia that would assist him in obtaining health insurance and sent several release forms to authorize the release of Gary's medical records. While it appears that Gary understood James' repeated requests to contact the non-profit as demands that he do so, James did not explicitly condition any release of funds on Gary obtaining coverage through the non-profit. At the orphans' court hearing, Gary testified that he receives health insurance coverage through "welfare," he could "buy [his] own health insurance," and he did not need James' assistance in procuring insurance. N.T., 9/10/18, at 79. However, in correspondence, Gary's counsel also requested James' assistance in procuring health insurance.

We are not persuaded that the statement in the orphans' court's order that Gary "shall be permitted to select his own health insurance plan" constitutes an abuse of discretion. The order is technically consistent with the trust as the text of that instrument does not authorize the trustee to have any role in Gary's medical decisions, including his choice of health care providers or insurers. Furthermore, although the orphans' court does not explicitly state that the trustee is required to reimburse Gary's coverage, the trust's provision for Gary's well-being indicates that the trustee should provide Gary funds for his so long as Gary needs such assistance and he is in compliance with the trust's terms. Nevertheless, we do not interpret the orphans' court's order as requiring James to fully relinquish his discretion to approve distributions and agree to release any amount of funds Gary would request for his health care needs. As Gary has not yet requested, nor has James refused, distributions from the trust for health insurance, we need not address any potential dispute that might arise in the future with respect to health care distributions. *See Yocum v. Pennsylvania Gaming Control Board*, 161 A.3d 228, 234 (Pa. 2017) (claims that are speculative, not concrete, and would require courts to issue advisory opinions are non-justiciable).

James next challenges the portion of the orphans' court's order providing that James, as trustee, "shall not deny Gary [] adequate housing." Order, 3/19/19, ¶6. James argues that this order, in conjunction with the orphans' court's discussion in its opinion of Gary's desire to purchase a three bedroom house near his current residence that had been listed for $169,000,

Opinion, 3/19/19, at 9, encroaches on his sole discretion to determine the appropriateness of distributions to Gary.

Again, under the terms of the trust, we do not discern an abuse of discretion in the orphans' court's order. The order provides that distributions shall be made to Gary for his maintenance, support, and well-being if he satisfies the three trust requirements, which the orphans' court accurately interpreted as requiring that the trust provide for Gary's housing should he have a need for housing. However, neither the order nor the opinion direct the trustee to make a distribution for the purchase of the house Gary had identified; therefore, the orphans' court did not impinge James' discretion over trust distributions.

Finally, James challenges the portion of the order mandating that he "[i]ssue a check payable to [Gary's attorney] for an amount to satisfy the IRS lien after a satisfaction amount is negotiated by her." Order, 3/19/19, ¶3(a). This tax debt relates to Gary's inheritance of an investment retirement account from Eleanor outside the estate in 2015 that had grown to over $17,000 by the September 2018 hearing. Gary did not initially pay the federal taxes on the inheritance; however, it appears from his first communications with James regarding the trust in early 2016 that he believed that he was entitled to substantial immediate trust distributions from which he might have timely paid his taxes.

While James maintains that the IRS debt is "further proof of [Gary's] failure to exercise financial responsibility," James' Brief at 37, the debt was

incurred years prior to the initiation of this litigation and, as was made plainly clear at the hearing, Gary has no income and resources by which he can satisfy the debt and repair the damage by his previous financial lapses in judgment. Thus, withholding distributions to Gary to pay the debt will prevent him from establishing to James in the future that he is capable of making responsible decisions and prevents him from attaining the well-being that the trust provides for him. We therefore do not find an abuse of discretion in the trustee's order directing that the trust be responsible for payment of Appellant's IRS debt.

**IV.**

In his final issue, James argues that the orphans' court's award of attorneys' fees to Gary was an error of law and abuse of discretion. James contends that the orphans' court did not cite any statute or rule or make any factual findings that would justify the award. James asserts that the orphans' court resolved a genuine disagreement regarding the terms of the trust and there was no allegation of wrongdoing by James or his counsel during the course of the litigation. James further argues that there was no support for the attorneys' fee award of $13,975.10 as Gary's counsel had only submitted invoices showing that she had billed approximately $8,000, there was no analysis of the reasonableness of the fees Gary's counsel had billed, and the court's award of "any subsequent legal fees through the date of this Order" lacked any evidentiary support. Order, 3/19/19, ¶3(b).

We review a court's award of attorneys' fees for a palpable abuse of discretion. *Trust Agreement of Sawders*, 201 A.3d at 200. Here, the orphans' court did not enunciate any basis for the award in its order or opinion. We note that "[t]he general rule is that each party to adversary litigation is required to pay his or her own counsel fees." *Id.* (citation omitted). Section 2503(7) of the Judicial Code permits the award of counsel fees "as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S. § 2503(7). Our Supreme Court has held that "any award of counsel fees pursuant to 42 Pa.C.S. § 2503(7) must be supported by a trial court's specific finding of dilatory, obdurate or vexatious conduct." *Township of South Strabane v. Piecknick*, 686 A.2d 1297, 1301 (Pa. 1996). In this case, the orphans' court did not make a finding that James engaged in dilatory, obdurate, or vexatious conduct during the actual course of the litigation, nor do we perceive any such conduct from our review of the record. Furthermore, while Gary's petition seeking James' removal or the dissolution of the trust was meritorious in part, this fact alone does not provide grounds for an award of counsel fees. *See Trust Agreement of Sawders*, 201 A.3d at 200 (holding that a party is not entitled to an award of counsel fees by virtue of the fact that she prevails in litigation concerning the interpretation of a trust). Therefore, Section 2503(7) of the Judicial Code does not justify the attorneys' fee award.[6]

---

[6] Section 2503 of the Judicial Code sets forth several other bases for the award of attorneys' fees, none of which are relevant here.

Citing **Estate of Wanamaker**, 460 A.2d 824 (Pa. Super. 1983), Gary argues that "exceptional circumstances" existed here to support the award of attorneys' fees. In **Estate of Wanamaker**, we explained that "[i]n the absence of a statute allowing counsel fees, recovery of such fees will be permitted only in exceptional circumstances." **Estate of Wanamaker**, 460 A.2d 824, 825 (Pa. Super. 1983); **see also Trust Agreement of Sawders**, 201 A.3d at 200. We conclude that exceptional circumstances exist here that support an award of attorneys' fees to Gary's counsel from the trust. As set forth above, Gary lives in poverty and lacks any resources from which to pay the amounts billed by his counsel and, to the extent he currently receives benefits through the SSI and food stamp programs, he will likely be required to forfeit these benefits as a result of trust distributions. In the absence of an award of attorneys' fees in Gary's favor, the debt Gary incurred in bringing this action to obtain distributions from the trust for his living expenses will only further deepen his need for support from the trust for his maintenance, support, and well-being. In such a situation, an award of attorneys' fees from a trust to the beneficiary's counsel is warranted.

However, we agree with James that the attorneys' fee award of $13,975.10 lacked support in the record. At the orphans' court hearing, Gary's counsel submitted invoices demonstrating that she had billed $8,138.35, of which $5,063.35 remained outstanding. Exhibit P-16. The figure that the orphans' court arrived at for its award does not find support in the invoices, nor did the orphans' court make any factual findings regarding

- 26 -

the reasonableness of the work performed and fees charged.  Accordingly, we remand to the orphans' court to review the invoices submitted by Gary's counsel and make such factual findings as are appropriate to support the award of attorneys' fees.

**Conclusion**

We conclude that paragraph 4 of the orphans' court's March 19, 2019 order providing for prospective $5,000 monthly payments to Gary from the trust upon his submission of a quarterly drug and alcohol test improperly encroached upon James' discretion as trustee to determine the appropriate distributions to provide for Gary's maintenance, support, and well-being.  We therefore vacate that portion of the order.  James did not challenge the portion of the orphans' court order directing that he distribute $40,000 to Gary representing eight monthly payments from the date of the orphans' court hearing through the date of the order, and therefore we leave this portion of the order intact.  Regarding the interim period between the date of the orphans' court's order and this decision, we remand to the orphans' court to determine whether James appropriately exercised his discretion in the distributions made to Gary under the terms of the trust.

Furthermore, while we do not conclude that the orphans' court abused its discretion in awarding attorneys' fees to Gary, we vacate the award as lacking any support in the record.  We remand to the orphans' court to accept

such further evidence as is necessary, make the necessary findings of fact, and fix the amount of the award.

We affirm the order in all other respects.

Order affirmed in part and vacated in part. Remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

President Judge Panella joins the Memorandum.

Judge Strassburger files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2020