J-A16042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| SUZANNE HALLOWELL, AMBER HALLOWELL, AND SEAN HALLOWELL | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| WAYNE HALLOWELL | : : | |
| Appellant | : | No. 1157 MDA 2022 |

Appeal from the Decree Entered July 18, 2022
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87791

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: AUGUST 15, 2023**

Wayne Hallowell (Appellant) appeals from the decree entered in the Berks County Court of Common Pleas Orphans' Court, which, upon petition by trust beneficiaries Suzanne Hallowell, Amber Hallowell, and Sean Hallowell (collectively Appellees),[1] removed Appellant as trustee of the Erwin W. Burk Family Revocable Trust and the Erwin W. Burk Revocable Trust (collectively the Trusts), determined that both Amber and Sean were entitled to further distributions, and imposed a surcharge for Appellees' attorney fees. On appeal, he contends the orphans' court abused its discretion when: (1) it relied on a preliminary draft accounting, rather than the final accounting, in making factual findings; (2) it determined that beneficiary Amber was entitled

_____

[1] Appellee Suzanne Hallowell is Appellant's estranged wife, and Amber and Sean are their adult children.

to further distributions from the Trust; (3) it determined that beneficiary Sean was entitled to further distributions from the Trust; and (4) it applied a surcharge for Appellees' legal fees. For the reasons below, we affirm in part and reverse in part.

This appeal involves the administration of two trusts created by grantor, Erwin W. Burk (Grantor).[2] The first trust — the Erwin W. Burk Family Revocable Trust — was executed in July of 1994 (the 1994 Trust). Grantor's wife, Ada Z. Burk, was listed as the second grantor. The second trust — the Erwin W. Burk Revocable Trust — was executed in July of 2001 (the 2001 Trust). Both Grantor and his wife are now deceased.[3] Appellant is the nephew, by marriage, of Grantor. *See* N.T. at 122. At some point before his death, Grantor adopted Appellant so he "could give [him] gifts and stuff for taxes." *Id.*

Both the 1994 Trust and the 2001 Trust list Grantor, Appellant, and attorney Phelps T. Riley as trustees. Attorney Riley was later removed as a co-trustee and disbarred. *See* N.T. at 123. Appellant then "brought in" his accountant, Bill Maslo, as a co-trustee, until 2014. *Id.* From June 9, 2014,

---

[2] Both the parties and the trial court treat the Trusts as one entity. As the court noted in its decree, Appellant "has completely commingled funds from the two separate trusts [for years,] provided a single accounting for both, and stipulated through counsel that the relevant provisions of the two trust documents are the same." Decree, 7/18/21, at 1.

[3] Grantor passed away "somewhere around" 2001 or 2002. N.T., 6/15/22, at 123.

- 2 -

to present, Appellant has been the sole trustee of both Trusts. ***See id.***;

Decree, 7/18/22, at 1. It is undisputed that after Appellant became sole

Trustee, he commingled the funds of both Trusts in one account. N.T. at 29-

30.

The distribution provisions of the Trusts are separated into seven Trust

Periods. All parties agree that the Trusts are currently in Trust Period No. 4.[4]

***See*** Orphans' Ct. Op., 10/26/22, at 2. The Trusts contain the following

relevant provisions:

> 11.13 <u>Trust Period No. 4</u>. The Trustee shall hold and administer in trust during Trust Period No. 4 the Trust Property set aside for [Appellant] pursuant to section 11.11 as follows:
>
> (a) <u>Income: Descendants</u>. The Trustee each year shall pay to or use for the benefit of [Appellant, Appellant's] Spouse, [and Appellant's] Descendants . . . in equal or unequal proportions, and in monthly or other convenient installments, so much of the Net Trust Income as the Trustee in the Trustee's sole discretion determines to be necessary for their reasonable support, maintenance, health and education.
>
>           \*    \*    \*
>
> (d) <u>Principal : Descendants, Spouses</u>. The Trustee in the Trustee's sole discretion shall pay to or use for the benefit of [Appellant], [Appellant's] Spouse, [and Appellant's] Descendants . . . at any time and from time to time so much of the Trust Principal as the Trustee determines to be necessary for their reasonable support, maintenance, health and education.
>
> (e) <u>Principal: Descendants</u>: The Trustee in the Trustee's sole discretion shall pay to or use for the benefit of [Appellant]

---

[4] Trust Period No. 3 ended when Appellant's mother, Helen Z. Hallowell, passed away. ***See*** N.T. at 22; Exhibit P-2, 2001 Trust (2001 Trust), at § 1.1; Exhibit P-3, 1994 Trust (1994 Trust), at § 1.1. The record does indicate when Appellant's mother died.

and [Appellant's] Descendants at any time and from time to time so much of the Trust Principal as the Trustee determines to be necessary, and in their best interests, to enable them to marry, to enter into a trade or business, to purchase a home or for similar purposes.

\*     \*     \*

11.25 <u>Trustee Discretion</u>.   (a) The Trustee, in making any decisions pursuant to this section 11 to pay Net Trust Income and/or Trust Principal to any Beneficiary, **shall consider**:

**(1) the priorities and qualifications set forth in section 13.1, et seq.,**

(2) the income and principal from all sources known to the Trustee of the Beneficiary and the Beneficiary's Spouse,

(3) the income and principal from all sources known to the Trustee of the Family Members who have a legal obligation to support the Beneficiary,

(4) the desirability of augmenting the separate estates of the Beneficiary and the Beneficiary's Spouse,

(5) the Federal and state income tax consequences to the beneficiary of any proposed distribution,

(6) all other circumstances and factors which the Trustee considers pertinent.

(b) The Trustee's decisions to make those discretionary payments, and the Trustee's making of those discretionary payments, shall be absolutely binding upon all Beneficiaries and shall not be subject to judicial review, and the Trustee shall be fully released and discharged from all further accountability and liability for those determinations and payments.

\*     \*     \*

13.5 <u>Trust Period No. 4</u>.   (a) The Grantor's **first priority** during Trust Period No. 4 is that **each Descendant of [Appellant]:**

**(1) receive the finest possible undergraduate and graduate educations on a full-time basis at all times on or before his or her 25th birthday**, and

- 4 -

(2) be supported according to his or her reasonable needs at all times while enrolled in undergraduate or graduate programs on a full-time basis,

to the extent, and only to the extent that his or her Parents are unable to satisfy the Grantor's desires from the Parent's assets and income.

(b) The Grantor's second priority during Trust Period No. 4 is that [Appellant, Appellant's] Spouse, and each Descendant of [Appellant] . . . in order of generation, be supported according to that person's reasonable needs.

\* \* \*

14.4 Discretionary Powers. (a) the Grantor has granted to the Trustee in sections 5 and 11 the power to make discretionary distributions of the net Trust Income and/or Trust Principal to certain Family Members.

(b) If any Trustee determines at any time to make any such distribution to the Trustee, in the Trustee's capacity as a permitted Beneficiary, or to any Parent, Spouse or Descendent of the Trustee, the Trustee may not make the distribution, **unless another Trustee who is not a Parent, Spouse or Descendant of that Trustee authorizes the proposed distribution by that Trustee.**

\* \* \*

16.4 Accounting: Quarterly. Each quarter after Grantor . . . ceases to be a Trustee, the Trustee shall furnish quarterly to each person then entitled to receive Net Trust Income a statement showing:

(a) the Trust's receipts and disbursements during the preceding quarter,

(b) each asset of the Trust . . ., and

(c) each liability of the Trust.

16.5 Accounting: Annual. Each year after Grantor . . . ceases to be a Trustee, the Trustee shall furnish to each person then entitled to receive Net Trust Income a statement showing the Trust Property then held by the Trustee and the Trust's receipts and disbursements during the preceding annual period.

1994 Trust at §§ 11.13(a), (d), (e), 11.25(a)-(b), 13.5(a)-(b), 14.4(a)-(b), 16.4(a)-(c), 16.5 (emphases added). *See also* 2001 Trust.[5]

While Appellant and Suzanne were married and living together, all distributions from the Trusts were deposited into a joint checking account of which Suzanne had access, and from which the parties' bills were paid. See N.T. at 31, 177-78. After Suzanne filed for divorce in 2019, Appellant commingled the Trust funds with his personal funds in an escrow account held by his attorney, Ken Picardi. *See id.* at 85, 136.

On July 8, 2021, Appellees filed a petition seeking removal of Appellant as Trustee. They averred Appellant: (1) failed to provide a required quarterly accounting of the Trusts; (2) failed to provide Appellees with a copy of the Trust documents; (3) made distributions to himself and Appellees without the required third-party authorization; (4) refused to pay for Amber's dental school expense and "intentionally misled" her to believe he had no obligation to do so; and (5) "denied disbursements" to Sean for his "care and treatment[.]" Appellees' Petition for Removal of Trustee & Other Relief, 7/8/21, at 2-4. Appellees requested that the orphans' court, *inter alia*, remove Appellant as trustee, require him to provide a full accounting of the Trusts, surcharge him for "all monies he took from the Trusts;" and "pay [Appellees']

---

[5] While some of the language in the 2001 Trust differs from that in the 1994 Trust, it is substantially the same for the purposes of the issues in this appeal. Therefore, for ease of disposition, we will refer only to the language in the 1994 Trust.

reasonable attorney's fees[.]" *Id.* at 5. Appellant filed an answer with new matter on August 16, 2021, asserting that Appellees "have each enjoyed significant benefits in the form to distributions from the Trusts during [his] tenure . . . as Trustee[,]" and only object presently due to his "impending divorce[.]" Appellant's Answer & New Matter to Petition for Removal of Trustee & Other Relief, 8/16/21, at 3-4. On August 30th, Appellees filed a motion to compel a full complete accounting of the Trusts.

On October 19, 2021, the orphans' court entered a decree prohibiting Appellant from "disburs[ing], distribut[ing], or otherwise spend[ing] any funds" in the Trusts or held by Appellant's agents that have been distributed from the Trusts, until further notice. Decree, 10/19/21, at 1. The court also directed Appellant to provide a "full accounting of the Trusts" by November 2nd, and scheduled a hearing on the matter for December 16th. *Id.* at 1-2. Appellant subsequently provided Appellees with a partial account for the period from May 9, 2014, through October 15, 2021, which showed a balance of $151,955.73 in the Trusts. *See* Exhibit P-4, Second & Partial Account, 1/15/21 (Preliminary Accounting), at 2.

After several continuances resulting from Appellant's attempt to obtain discovery from Appellees, the orphans' court conducted a status conference on April 27, 2022. That same day, it entered an order directing Appellant to file an accounting with "relevant supporting documentation . . . for the period during which he served as sole trustee, beginning May 7, 2014 to present[,]" and rescheduled the hearing on Appellees' petition for June 15, 2022. Order,

4/27/22. On May 27, 2022, Appellant filed an interim account, which showed a beginning balance of $802,381.76, and an ending balance of $63,352.22 in the Trusts. *See* Interim Account, 5/27/22 (Second Accounting), at 2.

The orphans' court conducted a hearing on June 15, 2022. Appellees first called Appellant as on cross. Appellant acknowledged that he "considered [himself] the main beneficiary" of the Trusts based on his conversations with the Grantor. N.T. at 25. Nevertheless, he explained that before Suzanne filed for divorce, all the distributions from the Trusts were deposited into their joint bank account.[6] *Id.* at 31-32. Appellant testified that he used trust funds to pay for Amber's undergraduate education, which included one year at Penn State University and three years at Cornell University. *See id.* at 48. He also paid for her teaching degree at Reading Area Community College, as well as some of her expenses at Arcadia University when "she wanted to become a physician assistant." *Id.* Appellant admitted, however, that he refused her request to pay for dental school. He explained:

> [T]hen she changed her mind again, and I believe she was around 24, 25, and . . . in my opinion she was becoming a professional student. She was just going to college having a good time. And I said you got a teaching degree, you have an ag[riculture] degree, now you want to become a dentist. You can go out and work for a couple years and earn your own money. We helped her out. It's not like we didn't give her an education. We shuffled a lot of money into her, exact amount, I don't know. Plus, at the same time we were paying the health care, we bought her a car.

---

[6] The parties owned and operated a family farm, which was subsidized by distributions from the Trusts for years, before they sold the farm sometime prior to this litigation. *See* N.T. at 37-40, 42-44, 130, 174-75.

*Id.* at 48. With regard to Sean, Appellant testified that trust distributions paid for his college education, and while he was in college, he and Suzanne "always took care of [Sean's] health care and dental, stuff like that." *Id.* at 132-33.

Appellant conceded, however, that after Suzanne filed for divorce, he used trust distributions for his sole benefit — specifically, to pay for his health care and attorneys. *See* N.T. at 33, 38-39. He explained that he had "always helped" his children, but that after he and Suzanne separated, "[a]s trustee [he] thought they got enough[.]" *Id.* at 37. Appellant acknowledged that when he became sole trustee, the balance in the Trusts was $802,381.76, and that there is currently "a little over $63,000" remaining in the Trusts. *Id.* at 73-74. He further noted that the escrow account held by his attorney includes his personal funds from the sale of the family farm, commingled with the funds from both the 1994 and 2001 Trusts. *Id.* at 86-87, 103-04, 108. Appellant testified that the payments for his personal expenses should have come from his own money — however, he did not know how much of his personal funds were commingled with the Trust funds. *See id.* at 100, 108, 148.

With regard to his responsibilities as trustee, Appellant admitted he: (1) commingled the funds in both trusts into one account, and then commingled trust funds with his personal funds; (2) refused Amber's request to pay for dental school before she turned 25 years old; (3) failed to distribute any trust funds to Appellees since he and Suzanne began divorce proceedings; (4) made distributions to himself without the approval of a third-party trustee in violation of Section 14.4; (5) made distributions to himself after the orphans'

court's October 2021 order prohibiting him from doing so; (6) failed to provide quarterly or annual accountings of the Trusts to Appellees pursuant to Sections 16.4 and 16.5;[7] and (7) never provided Appellees with a copy of the Trust documents. *See* N.T. at 29, 47-48, 53, 55, 60-61, 63-64, 83-85, 103-04, 116, 120.

Amber, who was 36 years old at the time of the hearing, testified that she had not seen the Trust agreements before she was 25 years old, and was unaware of the provision providing for her education. *See* N.T. at 156, 200. While she was an undergraduate student at Cornell, she asked Appellant if she "should try to expediate [her] schooling" to finish a semester or two early because it was a "very expensive school[.]" *Id.* at 153. She claimed Appellant told her there was "plenty of money" in the Trusts to pay for her and Sean's education. *Id.* However, when she discussed the possibility of attending dental school during her senior year at Cornell, Amber testified that Appellant told her she "got enough money and it was his money, he could do what he wanted." *Id.* at 154, 156-57. Amber stated she waited until she was 28 to begin dental school so that she could save money for tuition. *Id.* at 154-55, 157. She further claimed that if she had been aware of the Trust provision providing for her education expenses until the age of 25, she "would have finished [undergraduate] school early" so that she could have completed

---

[7] In fact, Appellant acknowledged the first full accounting he provided since he was sole Trustee was in May of 2022. N.T. at 61.

dental school before her 25th birthday. ***See id.*** at 156. Amber provided the court with a breakdown of the educational expenses she incurred which totaled $312,634.97. ***See id.*** at 150-53; ***see also*** P-5, Amber's Expenses for Dental School.

Suzanne testified that she was not seeking any additional funds from the Trusts *via* a surcharge. ***See*** N.T. at 172-73. She confirmed Amber's testimony that Amber told Appellant she wanted to go to dental school while still pursuing her undergraduate degree at Cornell, and that Appellant "said no, you've gotten enough." ***Id.*** at 175. Suzanne further stated that she did not see a copy of the Trust agreements before 2019. ***Id.*** at 179.

Sean testified that while he was aware of the Trusts growing up, he was "never provided any sort of specifics[.]" N.T. at 183-84. He knew there was money for college, and he "went to college for a year or two" — he acknowledged that Appellant provided money for his college expenses. ***Id.*** at 184. At the time of the hearing, Sean was 39 years old and unemployed. ***Id.*** at 181-82. He stated he worked on the family's farm for a while, but since it was sold he has been "trying to work a part-time job[.]" ***Id.*** at 184-85. Sean testified he was diagnosed with depression that has made it difficult for him "to hold . . . full-time employment[.]" ***Id.*** at 185. Sean stated that Appellant has not inquired about his "financial needs[.]" ***Id.*** at 180.

At the conclusion of the hearing, Appellant's counsel asserted that while Appellant disputed the allegations of Appellees and any request for a surcharge, he no longer wanted to serve as Trustee of either of the Trusts.

*See id*. at 204, 234. The court commented that there was "no question [Appellant] should be removed from trustee[,]" but requested the parties file briefs concerning the surcharge issue. *See id.* at 234.

Both Appellant and Appellees submitted post-trial briefs. On July 18, 2022, the orphans' court entered a final decree. The decree outlined the court's factual findings, and directed as follows:

1. [Appellant] is prohibited from any further actions as Trustee of the Trust[s] except to accomplish the directives of this Decree.

2. A surcharge against [Appellant] for legal fees and costs is awarded in the amount of $42,790.39 and same shall be paid by [Appellant] to [Appellees' counsel] within ten days of the date of this Decree.

3. A surcharge against [Appellant] for Trust funds that should have been distributed to Trust Beneficiary, Amber Hallowell for education expenses is awarded in the amount of $312,634.97 and the same shall be paid by [Appellant] to Amber Hallowell . . . within thirty days of the date of this Decree.

4. A surcharge against [Appellant] for Trust funds that should have been distributed to Trust Beneficiary, Sean Hallowell is awarded in the amount of $312,000 and the same shall be paid by [Appellant] to Sean Hallowell . . . within thirty days of the date of this Decree.

5. If for any reason [Appellant] fails to comply with the foregoing paragraphs . . . [Appellant] shall:

   a. Immediately transfer the full amount of the Trust [Principal] Balance on Hand as set forth in [P-4] of $151,955.73 to [Appellees,] care of their counsel, to be used in the following priority:

      i.   Payment of [Appellees'] counsel in full and for any further legal expense in this matter;

      ii.  Payment to Amber Hallowell as set forth in the foregoing paragraph 3;

- 12 -

iii. Payment to Sean Hallowell as set forth in the foregoing paragraph 4; and

iv. Any remainder to be held under the terms of the Trust.

b. Be deemed to have been removed as Trustee with [Appellees] substituted as Trustee.

Decree, 7/18/22, at 4-5.

This timely appeal followed. Appellant later complied with the orphans' court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the orphans' court filed a responsive opinion on October 26, 2022.

Appellant presents four issues for our review:

A. Did the [orphans'] court abuse its discretion through its decision to rely solely on the preliminary draft accounting and its factual finding that all distributions from the Trusts from June 9, 2014 to the present were made, at least partially, for [Appellant's] benefit as the basis for issuing the surcharges against [him]?

B. Did the [orphans'] court abuse its discretion in holding that the Trusts required further distributions to Amber Hallowell?

C. Did the [orphans'] court abuse its discretion in holding that the Trusts required further distributions to Sean Hallowell?

D. Did the [orphans'] court abuse its discretion in applying a surcharge against [Appellant] for [Appellees'] legal fees and costs in the amount of $42,790.39?

Appellant's Brief at 5 (some capitalization omitted).[8]

_____

[8] In his Pa.R.A.P. 1925(b) statement, Appellant also challenged the orphans' court's determination that he breached his fiduciary duties as Trustee. *See* Appellant's Statement of Errors Complained of on Appellant Pursuant to Rule 1925(b), 9/14/22, at 1. He has not, however, raised that claim in his brief before this Court. Thus, it is abandoned on appeal.

Our review of a ruling of the orphans' court is deferential. *In re Scheidmantel*, 868 A.2d 464, 478 (Pa. Super. 2005).

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the [o]rphans' [c]ourt's findings, our task is to ensure that the record is free from legal error and to determine if the [o]rphans' [c]ourt's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*Id.* at 478-79 (citation omitted). Indeed, we are not bound by factual findings "if there has been an abuse of discretion, a capricious disregard of evidence, or a lack of evidentiary support on the record." *Id.* at 479 (citation omitted).

In his first issue, Appellant argues the trial court abused its discretion when it relied solely on the October 2021 Preliminary Accounting, rather than the May 2022 Second Accounting, to support its factual finding that all of the Trust distributions since 2014 were made, at least partially, for Appellant's benefit. *See* Appellant's Brief at 21. He further complains that this finding was the basis of the court's decision to impose the surcharges. *See id.* Appellant insists the Preliminary Accounting was "incomplete and preliminary" and that Appellees were aware he was attempting to obtain records from them in order to prepare a more complete accounting. *Id.* at 22. Appellant maintains that he objected to the entry of the Preliminary Accounting at trial

— asserting it was "superseded" by the Second Accounting — but the orphans' court overruled his objection. *Id.*

Appellant further argues that the primary discrepancy in the Preliminary and Second Accountings is the manner in which the funds deposited in the attorney escrow account were recorded. *See* Appellant's Brief at 23. He insists that the Second Accounting "clearly differentiates between distributions from the Trusts and [Appellant's] personal funds." *Id.* Thus, Appellant contends that many of the orphans' court's factual findings — which conclude that Appellant used Trust funds for his sole benefit — are not supported by the record. *See id.* at 24-28.

The orphans' court rejected this argument as follows:

> [Appellant] contends that [the orphans'] court erred in declining to strike the inaccurate, preliminary accounting from the record, refusing to permit [Appellant] to explain the updated, more accurate accounting, and apparently relied on the preliminary accounting in making findings. This issue is without merit.

> [The orphans'] court noted the discrepancy between the two accountings, which showed [Appellant] does not understand his duties to provide accurate accounting and the difficulties encountered when funds are commingled. It is just one of the reasons for the removal of [Appellant as] Trustee, to which [he] agreed on the record to be removed. [Appellant's] counsel could have addressed the discrepancies between the two accountings in her examination of [Appellant. The orphans'] court ruled only that [Appellees'] counsel could question [Appellant] about the earlier accounting.

Orphans' Ct. Op. at 11.

Our review reveals no abuse of discretion by the orphans' court. Appellant takes particular umbrage with the court's factual finding that "[a]ll

- 15 -

distributions from the Trust[s] from June 9, 2014, to present were made, at least partially, for [Appellant's] benefit." ***See*** Decree, 7/18/22, at 2; Appellant's Brief at 21, 26. He emphasizes that Trust disbursements paid for both Amber and Sean's education expenses, which did not benefit him at all, and most of the disbursements were deposited into his joint checking account with Suzanne to benefit the "farming operations[,]" of which he likewise claims he received no benefit. Appellant's Brief at 27-28. Appellant, however, ignores two crucial details: (1) the Trust disbursements for Amber's and Sean's education were made **prior** to June of 2014;[9] and (2) the upkeep of the farm provided a benefit to him. As the orphans' court explained:

> Prior to the divorce, [Appellant] made distributions to keep the farm afloat and to pay other living expenses. These distributions benefited him partially because they relieved him of the financial responsibility to pay the expenses, and he worked on the farm. . . .

Orphans' Ct. Op. at 11. We note that while Appellant claims "[i]t is uncontested [he] does not participate in the farming operations and does not receive any benefit from the same[,]" he provides no record citation for this bald statement. ***See*** Appellant's Brief at 28. Rather, Appellant referred to himself as a "farm boy" and testified that he worked on the family farm in some capacity until 2021. ***See*** N.T. at 62, 130. He also received money from the sale of the farm. ***See id.*** at 87, 100. Thus, the orphans' court's

---

[9] At the time of the June 2021 hearing, Amber was 36 years old and Sean was 39 years old. Thus, Amber would have turned 25 in 2010, and Sean in 2007.

determination that Appellant benefitted, at least partially, from all trust disbursements while he was the sole trustee is supported by the record.

Moreover, our review of the record reveals the orphans' court did not rely solely on the Preliminary Accounting for its factual findings. Appellant claims the Second Accounting demonstrates that the personal bills — including legal bills — he paid from the attorney escrow account after Suzanne filed for divorce, were paid with commingled personal funds as opposed to Trust disbursements. ***See*** Appellant's Brief at 25-26. However, despite the fact that Appellant's counsel argued to the court that the Second Accounting clearly designated Trust funds from personal funds,[10] Appellant provided no testimony as to this distinction. In fact, when asked "how much of [his] personal funds is in the trust account right now[,]" he replied: "I don't know. I have to ask Ken Picardi [ ] that. He's handling that." N.T. at 108. Appellant later acknowledged that he did not know if the funds described in the Second Accounting were Trust funds or personal funds. ***Id.*** at 148. Moreover, although Attorney Picardi may have been able to clear up any confusion, Appellant did not call him to testify.[11] Appellant also candidly admitted he did not know how much of the Trust funds he had taken for his own benefit since his separation from Suzanne. ***Id.*** at 38. Accordingly, Appellant's first issue warrants no relief.

---

[10] ***See*** N.T. at 222-23.

[11] Appellant appears to assert that his own Second Accounting is sufficient, without any accompanying testimony, to support his claim. We disagree.

Next, Appellant contends the orphans' court abused its discretion in directing further Trust distributions to Amber. Appellant's Brief at 29. He emphasizes that "the Trusts unambiguously gave [the Trustee, *i.e.* Appellant,] discretion . . . regarding whether to make distributions." *Id.* at 31. *See* 1994 Trust at § 11.25(a)-(b). Moreover, the Trusts provide that Trustee's decisions regarding discretionary payments are "absolutely binding." Appellant's Brief at 35, *citing* 1994 Trust at § 11.25(b). Appellant maintains that he paid for Amber's undergraduate and post-graduate schooling, but later "used his discretion to decline paying for . . . dental school because he believed she was becoming a 'professional student' rather than planning to attend school to further a particular career." Appellant's Brief at 35. Although the Trusts designated education expenses as a priority, Appellant notes that it was but one factor he was required to consider as Trustee when exercising his discretion — paying for his children's education was not "a mandatory direction." *Id.* at 38. He further explains that if he had paid more than $300,000 for Amber's dental school, he would have been "significantly and inequitably favoring Amber over any other beneficiary." *Id.* at 37. Lastly, Appellant argues that even if the court properly determined he was required to pay for Amber's dental school, there was no finding that his failure to do so "caused a loss to the Trust[,]" a prerequisite to justify a surcharge. *Id.* at 38.

Our review is guided by the following:

> The settled law in Pennsylvania is that the pole star in every trust . . . is the settlor's . . . intent and that intent must prevail.

The settlor's intent may be divined by considering the trust document as a whole. . . .

*In re Est. of Warden*, 2 A.3d 565, 572 (Pa. Super. 2010) (citations & quotation marks omitted).  Moreover:

> The primary duty of a trustee is the preservation of the assets of the trust and the safety of the trust principal.  The standard of care imposed upon a trustee is that which a man of ordinary prudence would practice in the care of his own estate.  Surcharge is the remedy when a trustee fails to exercise common prudence, skill and caution in the performance of its fiduciary duty, resulting in a want of due care.  *See In re Miller's Estate*, 26 A.2d 320, 321 ([Pa.] 1942) (defining "surcharge" as "the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty ... imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care").

*Id.* at 573 (some citations & quotation marks omitted).  However, before ordering a surcharge, an orphans' court must find:  "(1) that the trustee breached a fiduciary duty and (2) that the trustee's breach caused a loss to the trust."  *Id.*

The orphans' court's use of the term "surcharge" in its decree to describe the payment due to Amber is a misnomer.  While it is clear the court found Appellant breached his fiduciary duties, Appellant correctly states that there was no testimony that this breach caused a loss **to the trust**.  *See* Appellant's Brief at 38; *In re Est. of Warden*, 2 A.3d at 573.  Rather, the orphans' court determined that Appellant abused his discretion, as Trustee, when he denied Amber's request to pay her dental school expenses.  The court explained:

> [Appellant] never considered the Grantor's preferences in exercising his discretion and focused his decision on what **he** wanted.  [Appellant] admitted this during his testimony.  Even

though his daughter was under the age of twenty-five, he felt that she had enough of an education and should get employment. Amber asked for the money while she was an undergraduate student, and [Appellant] refused. He also had informed her that at that time there was enough money for both children's higher education, so there was no reason to refuse her request. Sean did not finish college, so even more funds were available for Amber's education.

Orphans' Ct. Op. at 12. Accordingly, the court determined that Amber was entitled to a distribution from the Trust for her dental school expenses.

Our review reveals no abuse of discretion in the orphans' court ruling. Appellant focuses solely on the language in Section 11.25 of the Trusts, which provides him with the **sole discretion** to make distributions to the beneficiaries. *See* 1994 Trust at § 11.25(a)-(b) (noting the Trustee's decisions are "absolutely binding" and "not . . . subject to review"). While he recognizes that, in exercising his discretion, he must **consider** the Grantor's priority of education as set forth in Section 13.5, he maintains that the priority is still **only one** factor he must consider, along with "all other circumstances and factors which the Trustee considers pertinent." *See* 1994 Trust at § 11.25(a)(6). Thus, Appellant concludes that under the terms of the Trusts, the Trustee "has the broadest possible discretion in making distributions[,]" and he properly exercised that discretion when he declined to pay for Amber's dental school. *See* Appellant's Brief at 35.

We note that:

Generally, [courts] will not interfere with the exercise of a discretionary power by a trustee unless "the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his

- 20 -

judgment, or acts beyond the bounds of a reasonable judgment."
. . .

***In re Est. of Feinstein***, 527 A.2d 1034, 1037 (Pa. Super. 1987) (citation omitted). Here, the orphans' court found, and we agree, that Appellant failed to exercise reasonable judgment when he refused to pay for Amber's dental school. ***See*** Orphans' Ct. Op. at 12.

The Trust language clearly provides that during Trust Period No. 4, the Grantor's "**first** priority" is to provide "the finest possible undergraduate and graduate educations" to Appellant's children "on or before [their] 25th birthday[.]" 1994 Trust at § 13.5(1) (emphasis added). The only caveat to the distributions is that the children and their parents (*i.e.* Appellant and Suzanne) must be unable to pay for the education from their own "assets and income." ***Id.*** Appellant makes no claim that, at the time Amber requested funds for dental school, either she or he and Suzanne had the ability to pay for the schooling.

Moreover, while we recognize that the education priority set forth in Section 13.2(1) is only one factor Appellant was required to consider in exercising his discretion as Trustee, his testimony makes clear that he did not base his decision to refuse Amber's request for Trust distributions upon any of the other factors set forth in Section 11.25. He simply decided Amber "was becoming a professional student" and was "taking advantage of" the Trusts. ***See*** N.T. at 48-49. However, the language of Section 13.5(a) does not provide any limitation on the number of degrees or areas of study the beneficiary may pursue before her 25th birthday — it requires only that the

beneficiary attend undergraduate or graduate school on a full-time basis and that the beneficiary or her parents are unable to pay the cost themselves. *See* 1994 Trust at § 13.5(a)-(b). Here, Amber testified that had she known of the age limitation in the Trust, she could have completed her schooling by the age of 25. *See* N.T. at 155-56. Appellant did not dispute this claim nor provide any evidence to the contrary. Furthermore, Amber submitted to the court a thorough breakdown of the expenses she incurred pursuing her graduate education. Thus, the orphans' court did not abuse its discretion when it determined Amber was entitled to Trust distributions in the amount of $312,634.97.

Appellant's reliance on the catch-all factor — permitting the Trustee to consider "all other circumstances and factors which the Trustee considers pertinent" — to support his refusal to distribute Trust funds for Amber's dental education is misplaced. *See* Appellant's Brief at 34-35. Had Appellant expressed a **reasonable basis** for his decision, we agree that it would be binding. However, as noted *supra*, a court may interfere with a trustee's exercise of discretion if the trustee "fails to use his judgment, or acts beyond the bounds of a reasonable judgment." ***In re Est. of Feinstein***, 527 A.2d at 1037 (citation omitted). Appellant testified that he "considered [him]self the main beneficiary" of the Trusts and his children as "secondary" beneficiaries — which contradicted the plain language of the Trusts. *See* N.T. at 25, 27; 1994 Trust at § 11.13. Moreover, the sole reason he provided for refusing to pay for Amber's dental school was his belief she "was becoming a professional

student" and "taking advantage of" the Trusts. *Id.* at 48-49. Considering the Grantor provided no limits on the number of degrees a beneficiary could pursue, we agree with the orphans' court's determination that Appellant abused his discretion as Trustee, and that Amber was entitled to a distribution from the Trusts in the amount of her educational expenses. Thus, Appellant's second claim fails.

Next, Appellant similarly challenges the orphans' court's determination that Sean was entitled to a distribution from the Trusts in the amount of $312,000. Appellant repeats his arguments that: (1) there can be no surcharge when there is no loss to the Trusts; and (2) he, as Trustee, had absolute discretion to make distributions to the named beneficiaries. For the same reasons as stated above, we reject these claims.

Nevertheless, Appellant also insists that the court's award to Sean was "wholly speculative," and unlike the award to Amber, was unrelated to any "specific entitlement." Appellant's Brief at 42. We agree.

The orphans' court provided the following reasons in support of its distribution award to Sean:

> Sean's health insurance, if it had been paid by the [T]rusts, would probably amount to more than $100,000. Pursuant to Section 11.13(e) of the [T]rust[s], the descendants are also entitled to have the [T]rusts provide money for marriage, entry into a trade or business, or to purchase a home. Sean has no home and needs land for his livestock. The additional money may allow Sean to keep his livestock and provide a trade for him.

Orphans' Ct. Op. at 13.

The language of the Trust documents directs the Trustee to provide income and/or principal disbursements to Appellant's descendants as the "Trustee determines to be necessary for their reasonable support, maintenance, health and education." *See* 1994 Trust at § 11.13(a), (d). Section 11.13(e) also directs the Trustee to provide principal disbursements to Appellant's descendants "to enable them to marry, to enter into a trade or business, to purchase a home or for similar purposes." *Id.* at § 11.13(e). Lastly, Section 13.5, which sets forth the Grantor's priorities during Trust Period No. 4, provides that following the priority of the descendants' educational expenses, the "second priority is that [Appellant, Appellant's] Spouse, and each Descendant of [Appellant] . . . **in order of generation**, be supported according to that person's reasonable needs." *Id.* at § 13.5(b) (emphasis added).

Sean testified that he is unemployed, suffers from depression, has no health insurance, lives with his mother and his sister, and does not have sufficient income to pay for an apartment or his vehicle. *See* N.T. at 181-83, 185. While there was no testimony that he asked Appellant for any distribution from the Trusts which Appellant refused, we note that Sean did not receive a copy of the Trust documents until after the lawsuit was filed, and did not know "any . . . specifics[.]" *Id.* at 184. Further, the record is clear that Appellant did not inquire whether Sean needed any disbursements from the Trusts. *Id.* at 53-55. Nevertheless, the orphans' court's award is simply not supported by the record.

- 24 -

While the court speculates that Sean's health insurance "would probably amount to more than $100,000[,]" there was no testimonial or evidentiary support for that finding. *See* Orphans' Ct. Op. at 13. Moreover, contrary to the court's comments in its opinion, Sean did **not** request a Trust distribution to enable him to marry, enter into a trade, or purchase a home. *See* 1994 Trust at § 11.13(e). Furthermore, the court ignores the second priority in Section 13.25(b), which requires the Trustee to support the reasonable needs of the beneficiaries "**in order of generation**[.]" *Id.* at § 13.25(b) (emphasis added). Therefore, Appellant's "reasonable needs" would be prioritized over Sean's "reasonable needs." Appellees simply failed to provide any evidence detailing what Sean's reasonable needs were when Appellant purportedly breached his fiduciary duty as Trustee. Rather, they insist that the "terms of the [T]rust instruments [should] have led Appellant to disburse some amount — anything — to Sean for his maintenance and well-being[,]" and the court "fairly assigned a value to [his] loss as a common sense member of the community would." Appellees' Brief at 38-40. We conclude, however, that the court's award is entirely speculative. Accordingly, because the court's award to Sean lacks evidentiary support in the record, we are constrained to reverse that part of the decree.[12] *See Scheidmantel*, 868 A.2d at 478.

_____

[12] The orphans' court was, rightfully, critical of Appellant's utter failure to fulfill any of his fiduciary duties as Trustee. Moreover, we recognize the court was sympathetic to Sean's "mental health issues" and lack of "steady income or health insurance." *See* Orphans' Ct. Op. at 10. It appears the court intended
*(Footnote Continued Next Page)*

In his final claim, Appellant challenges the orphans' court's decision to impose a surcharge of $42,790.39 for Appellees' legal fees and costs. Appellant's Brief at 44. He argues that the general rule in litigation — referred to as the "American Rule" — is that each party pays their own counsel fees, and that an award of counsel fees to another party is "viewed as exceptional." **See id.** (citation omitted). Moreover, he insists that the record does not support a finding that he engaged in "dilatory, obdurate or vexatious conduct during the course of the litigation" to warrant an award of counsel fees pursuant to Section § 2503(7) of the Judicial Code. **See** 42 Pa.C.S. § 2503(7) (permitting the award of a reasonable counsel fee "as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter"). Appellant maintains that "the [orphans'] court did not enunciate any legal basis . . . for including [Appellees'] legal fees and costs in the surcharge action." Appellant's Brief at 46. Further, the fact that he used Trust funds to pay his own counsel fees is not "an established exception to the American Rule." **Id.** at 47.

The orphans' court provided the following explanation for the attorney fees surcharge:

---

to provide Sean with the same benefit that it awarded to Amber. However, as the court also observed "there may no longer be enough funds remaining in the [T]rust[s] to satisfy the judgment." **Id.** at 14. We simply cannot affirm a $312,000 distribution award absent any testimony or evidence to support the dollar amount.

- 26 -

In the case sub judice, a surcharge in the amount of [Appellees']
legal fees and costs is appropriate. [Appellant's] mismanagement
of the [T]rusts caused [Appellees] to file their action against him.
[Appellant] paid for his divorce lawyer with [T]rust funds, so he
considers lawyers' fees and costs to be proper expenses.

Orphans' Ct. Op. at 12-13.

Preliminarily, we note that "[t]he award of counsel fees is within the
sound discretion of the Orphans' Court." *In re Est. of Geniviva*, 675 A.2d
306, 313 (Pa. Super. 1996).

The general rule is that each party to adversary litigation is
required to pay his or her own counsel fees. In the absence of a
statute allowing counsel fees, recovery of such fees will be
permitted only in exceptional circumstances. . . .

*Est. of Wanamaker*, 460 A.2d 824, 825 (Pa. Super. 1983) (citations &
quotation marks omitted). Furthermore, Section 2503(7) of "[t]he Judicial
Code permits an award of reasonable counsel fees 'as a sanction against
another participant for dilatory, obdurate or vexatious conduct during the
pendency of a matter.'" *In re Ins. Tr. Agreement of Sawders*, 201 A.3d
192, 200 (Pa. Super. 2018), *citing* 42 Pa.C.S. § 2503(7). "Generally speaking,
'obdurate' conduct may be defined in this context as 'stubbornly persistent in
wrongdoing.'" *In re Est. of Burger*, 852 A.2d 385, 391 (Pa. Super. 2004),
*aff'd*, 898 A.2d 547 (Pa. 2006). Black's Law Dictionary defines "vexatious" as
"without reasonable or probable cause or excuse; harassing; annoying."
Black's Law Dictionary, "Vexatious" (11th ed. 2019).

While we recognize the orphans' court provided minimal explanation for
its award of attorneys' fees, we nevertheless conclude the award was properly
imposed within the court's discretion. Appellant's conduct in administering

the Trusts after Suzanne filed for divorce was solely self-serving. Particularly troubling is the fact that he commingled his personal funds with the Trust funds — which, in fact, he treated as personal funds — and he used distributions from the Trust for personal matters even after the orphans' court directed him to cease all distributions in October of 2021. Appellant's conduct both before and after Appellees petitioned for his removal of Trustee was both obdurate and vexatious.

We also emphasize that the orphans' court did **not** require Appellant to return the personal attorneys' fees he paid with Trust distributions. ***See*** Orphans' Ct. Op. at 3 (stating that surcharging Appellant "at this time is a prejudice barred by laches" since Appellees "reaped the benefits of [his] distributions during his tenure as Trustee for fifteen years"). Rather, the court directed the payment of Appellees' lawyer fees from Trust funds as a proper expense. ***See id.*** at 12-13. We detect no reason to disturb this ruling.

Therefore, because we conclude the orphans' court's award of $312,000 to Sean was speculative, and not supported by the record, we reverse that part of the decree. In all other respects, we affirm.

Decree affirmed in part and reversed in part.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2023